PEOPLE v NORRIS

PEOPLE v POOLE

OPINION OF THE COURT

1. CRIMINAL LAW—CONSTITUTIONAL LAW—RIGHT TO REMAIN SILENT.
   Failure to object at trial will not preclude the Court of Appeals from review of an alleged infringement of a defendant's constitutional right to remain silent.

2. CRIMINAL LAW—CONSTITUTIONAL LAW—RIGHT TO REMAIN SILENT—SELF-INCRIMINATION—EVIDENCE—DIRECT EXAMINATION.
   The prosecution is not allowed to use the silence of an accused at the time of arrest or during custody as evidence against him because such evidence would place an impermissible penalty upon the exercise of his privilege against self-incrimination; the sole exception to this rule is where the defendant makes allegations on direct examination as to what was said or not said at the time of arrest or during custody.

3. CRIMINAL LAW—ERROR—HARMLESS ERROR—TESTS TO DETERMINE—SOUND JUDICIAL PROCESS.
   An error injected into the proceedings by the prosecution may be unduly offensive to the maintenance of a sound judicial process and, therefore, not harmless error, if it is deliberately injected into the proceedings, deprives defendant of a fundamental element of adversary process, or is of a particularly inflammatory or persuasive kind.

4. CRIMINAL LAW—ERROR—HARMLESS ERROR—REASONABLE DOUBT.
   Error which does not constitute an affront to the integrity of the trial process is harmless beyond a reasonable doubt.

5. CRIMINAL LAW—ERROR—HARMLESS ERROR—RIGHT TO REMAIN SILENT—PROSECUTOR'S COMMENTS.
   A prosecutor's comments which are clearly directed at exposing a

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 5, 7] 29 Am Jur 2d, Evidence § 638 *et seq.*
[3, 4, 6] 21 Am Jur 2d, Criminal Law § 223.
[4] 5 Am Jur 2d, Appeal and Error §§ 778, 798.

defendant's silence while in custody in order to cast doubt on the defendant's alibi do not constitute harmless error.

DISSENT BY BEASLEY, J.

6. CRIMINAL LAW—ERROR—HARMLESS ERROR—EVIDENCE—CONDUCT OF PROSECUTOR.

    *A prosecutor who makes reference to a defendant's failure to claim an alibi to the police when arrested commits error; the inquiry then becomes whether such conduct constitutes reversible error.*

7. CRIMINAL LAW—CONSTITUTIONAL LAW—RIGHT TO REMAIN SILENT— REVIEW—FAILURE TO OBJECT—EVIDENCE—HARMLESS ERROR— JURY INSTRUCTIONS.

    *Reversal of a conviction for violation of a defendant's right of silence at the time of arrest or during custody is improper where a review of the whole record shows a lack of prejudice, a failure to make timely objection, overwhelming evidence of guilt, an indication that the error is harmless and a record of jury instructions beneficial to the defendant.*

Appeal from Jackson, Russell E. Noble, J. Submitted October 5, 1976, at Lansing. (Docket Nos. 25376, 25700.) Decided March 29, 1977. Leave to appeal applied for.

Tyrone Norris and Clyde Poole were convicted of unarmed robbery. Defendants appeal. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Bruce A. Barton,* Prosecuting Attorney, and *Judd R. Spray,* Assistant Prosecuting Attorney, for the people.

*Rogers, Weatherwax, Stapley & Zimmerman, P. C.,* for defendant Tyrone Norris.

*Myron E. Sanderson,* for defendant Clyde Poole.

Before: M. F. CAVANAGH, P. J., and R. M. MAHER and BEASLEY, JJ.

M. F. CAVANAGH, P. J. Defendants Tyrone Norris and Clyde Poole were jury-convicted of unarmed robbery, MCLA 750.530; MSA 28.798, on June 16, 1975. On July 1, 1975, defendant Norris was sentenced to 5 to 15 years in prison; defendant Poole was sentenced to 3-1/2 to 15 years in prison. Both appeal from their convictions as of right.

Although the defendants raise several issues on appeal, we find that treatment of a single issue is dispositive. The prosecutor's attempt to impeach the defendants' trial testimony by their silence during and after their arrest impermissibly burdened their state and Federal Constitutional rights to remain silent.

At their trial, both defendants Poole and Norris testified that they had alibis for the night of the robbery. During the prosecutor's cross-examination of defendant Poole, the following exchange occurred:

"Q  Apparently, you were arrested about five days after this happened?

\*   \*   \*

"Q  Did you tell the police at that time where you were at?
"A  I can't remember.
"Q  Can't remember?
"A  At the time, I couldn't.
"Q  Excuse me?
"A  They really didn't ask me.
"Q  You're sure about that?
"A  Yes.
"Q  Did you ever tell anybody you were at home, instead?
"A  Sir?
"Q  Did you ever tell anybody that you were at home instead of the Mark Three?
"A  No, sir.

"Q Never told anybody that?
"A No, sir.
"Q You're under oath.
"A Yes."

On cross-examination of defendant Norris, the prosecutor inquired whether he had discussed his alibi with anyone after he was arrested. Defendant Norris answered no.

Although no objections were made at the time of these questions, the next morning counsel for defendant Norris moved for a mistrial on the basis of the prosecutor's reference to Mr. Norris' failure to make a statement to the police. The prosecutor argued that this line of questioning had been proper cross-examination. The trial court refused to grant a mistrial.

Again during the final argument to the jury, the prosecutor raised the failure of defendant Norris to come forward to the police with his alibi.

Although defendant Poole failed to object to the prosecutor's action at trial, counsel for defendant Norris placed the question squarely before the trial judge. The offending cross-examination occurred late in the day, shortly before recess. Defense counsel made his mistrial motion at the commencement of proceedings the next morning. Even total failure to object at trial will not preclude this Court from review of an alleged infringement of the constitutional right to remain silent. *People v Gant,* 55 Mich App 510; 222 NW2d 784 (1974), *People v Miller,* 49 Mich App 53; 211 NW2d 242 (1973). The issue of the defendants' right to remain silent was sufficiently preserved for our review.

Michigan courts have repeatedly held that an accused may not be impeached by evidence of his silence at the time of arrest or during custody.

*People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973), *People v Bigge,* 288 Mich 417; 285 NW 5 (1939). "To allow the prosecution to use the silence of an accused against him would place an impermissible penalty upon the exercise of his privilege against self-incrimination." *People v Swan,* 56 Mich App 22, 31; 223 NW2d 346, 351 (1974). The single exception to the rule exists if the accused makes allegations on direct examination as to what was said or not said at the time of arrest or during custody. *People v Graham,* 386 Mich 452; 192 NW2d 255 (1971), *People v Perez,* 66 Mich App 685, 689; 239 NW2d 432 (1976). Neither defendant in this case testified on direct examination as to any statements made in custody.

Although the state argues that the prosecutor's questions did not infringe the defendants' rights, that argument comes years too late. The pattern of questions condemned in *People v Bobo, supra,* closely resembles what transpired in this trial:

> " '*Q.* Did you say anything to him [the questioning police officer] about the two other men running on the street?
> " '*A.* He didn't ask me.
> " '*Q.* I said did you say anything to him?
> " '*A.* No, I didn't.' "

390 Mich at 358; 212 NW2d at 192, fn 3.

The sole remaining issue is whether this error requires reversal. Michigan courts recognize a two-step test of reversible constitutional error:

> "The first step in determining whether an error is harmless is thus to ascertain whether it is unduly 'offensive to the maintenance of a sound judicial process'. An error may be intolerably offensive if it is deliberately injected into the proceedings by the prose-

cutor, if it deprives the defendant of a fundamental element of the adversary process, or if it is of a particularly inflammatory or persuasive kind." *People v Swan,* 56 Mich App 22, 31–32; 223 NW2d 346, 351–352 (1974).

If the error does not constitute an affront to the integrity of the trial process, "we must also be able to say that it was 'harmless beyond a reasonable doubt' ". 56 Mich App at 33; 223 NW2d at 352. Although *People v Swan* held the error in that case harmless beyond a reasonable doubt, this Court warned that such errors would not be condoned in the future:

"We will find it difficult in the future to believe that prosecutors and police are ignorant of the well-established principle of law which forbids comment upon an accused's silence or that clear violations of the principle arise from inadvertence. Deliberate violations of this rule may lead us to reverse convictions even where evidence might be overwhelming. The prosecutor who comments, or elicits comment, on a defendant's silence thus risks the loss of a perfectly good case for no reason." 56 Mich App at 35; 223 NW2d at 353.

We cannot find the errors in this case harmless. The trial of these defendants took place in June of 1975, a year after *Swan* and two years after *Bobo.* The prosecutor's comments were clearly directed at exposing the defendants' silence while in custody, in order to cast doubt on their alibis. Unlike other cases in which similar errors were held harmless, the testimony regarding the defendants' silence was not obtained by inadvertence, nor was it relevant to an important issue other than guilt. Even on appeal, the state refuses to admit that error occurred. We conclude that the prosecutor's conduct was either deliberate or flagrantly negligent. Other cases have found such conduct intoler-

ably offensive to the maintenance of a sound judicial process, and we agree. *People v Parks,* 57 Mich App 738; 226 NW2d 710 (1975), *People v Dunn,* 46 Mich App 226; 208 NW2d 239 (1973). As this Court foresaw in 1972,

"Continued expansion of the harmless error rule will merely encourage prosecutors to attempt to get such testimony in, since they know that, if they have a strong case, such testimony will not be considered to be reversible error, yet if they have a weak case, they will use such testimony to buttress the case to gain a conviction and then hope that the issue is not raised on appeal." *People v Jablonski,* 38 Mich App 33, 39; 195 NW2d 777 (1972).

(Indeed, on this appeal, defendant Poole failed to raise the error.) We believe that the Supreme Court in *People v Bobo* clearly stated its intention to eliminate references at trial to the accused's exercise of his constitutional right to silence.

Reversed.

R. M. MAHER, J., concurred.

BEASLEY, J. *(dissenting).* I dissent. Lack of prejudice and failure to make timely objection should preclude reversal for defendant-appellant, Clyde Poole. The same considerations apply to defendant-appellant, Tyrone Norris, and, in addition, application of *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973), in his context would represent an unwarranted extension of that case's rule.

This case arises from a purse-snatching-mugging of a middle-aged woman in the early morning hours of February 8, 1975. The prosecution's theory was that two men and two women were involved in the robbery. One woman, Denise Van-Buren, was granted immunity and the other three

defendants, Clyde Poole, Tyrone Norris and Elaine Curtis, were charged with unarmed robbery and tried. The defendants asserted an alibi defense. The jury found all three defendants guilty as charged. Defendant Curtis received three years probation. Defendants Poole and Norris were sentenced to prison terms of 3-1/2 to 15 years and 5 to 15 years respectively; defendants Poole and Norris now appeal.

The issue in regard to defendant Poole arises from the following testimony (cross-examination of defendant Poole by the prosecutor):

"Q Apparently, you were arrested about five days after this happened?

\* \* \*

"Q Did you tell the police at that time where you were at?
"A I can't remember.
"Q Can't remember?
"A At the time, I couldn't.
"Q Excuse me?
"A They really didn't ask me.
"Q You're sure about that?
"A Yes.
"Q Did you ever tell anybody you were at home, instead?
"A Sir?
"Q Did you ever tell anybody that you were at home instead of the Mark Three?
"A No, sir.
"Q Never told anybody that?
"A No, sir.
"Q You're under oath.
"A Yes."

Under *People v Bobo, supra,* the prosecutor erred in making reference to defendant Poole's

failure to tell his alibi to the police when he was arrested. However, the inquiry then becomes whether such constitutes reversible error. *People v Ivory,* 64 Mich App 537, 539; 236 NW2d 521 (1975), *lv den,* 396 Mich 828 (1976). In my opinion, it does not. It did not prejudice defendant Poole and, therefore, was harmless error.

A review of the whole record in this case shows that the proofs against all three defendants were overwhelming. Particularly damaging was the testimony of the witness who had been granted immunity. That testimony set forth not only the essential elements of the charged offense, but also added convincing details like the previous name of the victim which the witness saw on a check book in the victim's purse while the purse was in defendants' possession. Confronted with such evidence, defendant Poole's total defense was his own alibi testimony; none of his alibi witnesses were called. In this context, I cannot see a reasonable possibility that the error now raised was a contributing factor to defendant Poole's conviction. I would, therefore, treat it as harmless error. *People v Ivory, supra.*

However, a reversal should not be granted in regard to defendant Poole for another reason. Defendant Poole neither moved for a mistrial nor objected at trial to the testimony in question. He also raised no such question on appeal. The repeated failure of the defendant to raise this issue can be viewed in two ways. One, counsel for defendant has deliberately waived the issue; given the nature of the right waived and the tactical reasons which might lead an experienced trial counsel to waive it, I am of the opinion that such a waiver should not now be disturbed. See, *People v Degraffenreid,* 19 Mich App 702; 173 NW2d 317

(1969). Two, counsel for defendant mistakenly overlooked the issue; given the previously discussed lack of prejudice to defendant, such a mistake does not require reversal. *People v Degraffenreid, supra.*

The facts concerning defendant Norris are substantially different from those previously recited concerning defendant Poole. Defendant Norris, like defendant Poole, had filed a list of alibi witnesses, had presented none of them,[1] and had given alibi testimony on his own behalf. However, the prosecutor's questions to defendant Norris are different from those just reviewed (prosecutor's cross-examination):

"Q Have you ever talked to Vernon [Vernon Thomas is a listed alibi witness for defendant Norris] about this?

"A No, not in * * * to any depth or anything like that.

"Q Did you talk to him at all about this?

"A Not that I recall.

"Q Did you ever talk to anyone about this matter?

"A Yeah, through letters, you know.

"Q Did you ever tell anybody that you were drinking and playing cards that night?

"A Did I ever tell anyone?

"Q Yes.

"A I didn't see any importance in telling anyone, you know.

"Q After you were arrested, I mean?

"A After I was arrested, no. I wasn't—

"Q Did you go out on your own to tell anyone?

"A No.

"Q Why was that?

"A Because I didn't see any reason to until, you

---

[1] Vernon Thomas is listed on the information as a witness and was called and offered to counsel for defendants for cross-examination. Each cross-examined him.

know, after time for notice to come to court. I mean, I wasn't questioned when I was picked up or anything.

"Q You just figured to wait until we come to court?

"A Yes. I mean, I haven't any other alternative but to wait until I came to court.

"Q Did you try to contact anyone?

"A No, no one but my lawyer.

"Q Excuse me, I am sorry, I didn't hear.

"A I mean, never talked to anyone except, you know, except for my lawyer."

On redirect by defense counsel, reference was made for the first time to the police as follows:

"Q Tyrone, the police didn't ask you for a statement, did they?

"A No, they didn't.

"Q And, I believe, the Prosecutor asked you if you had communicated for—memory of that incident to anyone, with anyone else. Did you communicate that in writing to anyone, or by letter?

"A I mean, from the County Jail, I did."

Since no direct reference to the police is made by the prosecutor, his questions can be viewed in two different ways. One way to interpret the questions is as a cross-examination of defendant concerning his listed alibi witnesses, one of whom was the mentioned Vernon. Contrivance of alibi testimony by defendant's prompting of prospective witnesses would be a legitimate object of prosecutorial inquiry. Such questions can be answered without reference to defendant's silence in the presence of arresting officers, etc. Such questions to a defendant should, therefore, be allowed in this area just as they would be if any other witness were being questioned. If *Bobo, supra,* is to be applied in this context, then the case is being extended far beyond its birthplace in custodial interrogation type

settings. Such an extension, I believe, would be both inadvisable and unwarranted.

The prosecutor's questions can also be interpreted as a thinly veiled infringement on defendant Norris' constitutional right to remain silent when arrested.[2] However, even when read in this fashion, reversal should not be granted on this record. The same considerations of overwhelming evidence and harmless error apply to defendant Norris as they did to defendant Poole. However, in regard to defendant Norris, a few additional comments are in order concerning the matter of making a timely objection.

As already has been noted, defendant Poole never took any steps to preserve the issue concerning the prosecutor's questions. Defendant Norris did make a belated motion for mistrial the day after the questions were asked and after all defendants had rested their cases. The response of the trial judge perfectly pinpoints both the measure of merit underlying the motion and the problems associated with the delay in making it:

"THE COURT: Well, the Court feels that there was a very incidental and low-key reference to the fact that the Defendant Norris did not mention alibi to the police —or alibi witnesses. There was no objection made at the time, no motion to strike the answer, and the Court at this late date is not disposed to grant a motion for mistrial on this ground.

As a matter of fact, it seems to me that to emphasize this facet of the testimony by a cautionary instruction would probably confuse the Jury and would place undue emphasis on an aspect of the case that should not be emphasized; so the motion for a mistrial is denied, and Counsel may formally request a cautionary instruction if they want to prepare one and present it to the Court.

---

[2] US Const, Am V; Const 1963, art 1, § 17.

I will then decide at the appropriate time whether or not to give such instruction.

Anything further?"

In addition, the court's instructions included the following:

"The Defendants are not required to prove their innocence. The Defendant in a criminal case is not bound to explain his side of the case. The fact that a Defendant did not avail himself of any opportunity to discuss this case with the police should not be permitted by you to prejudice him in any way. It should not be considered as evidence of his guilt or innocence, and failure to discuss his or her side of the case with the police is not even a circumstance against such defendant and no inference of guilt can be indulged in by the jury on account of such failure on his part. A Defendant is not bound to explain his side of the case."

All the defendants received the benefit of this instruction. On this record, and especially in the absence of timely objection, none of them deserved more.

All other issues that have been raised are without merit.

I would affirm.