PEOPLE v SAIN

Docket No. 62984. Decided December 10, 1979. On application by the
defendant for leave to appeal the Supreme Court, in lieu of
granting leave to appeal, reversed the judgment of the Court of
Appeals and remanded the case to the Recorder's Court of
Detroit for a new trial.

Robert Sain was convicted by a jury in Recorder's Court of
Detroit, Henry Heading, J., of entering without breaking with
the intent to commit larceny. The arresting officer testified that
neither the defendant nor his codefendant, his son, responded
when asked for an explanation of their presence in a vacant
four-family dwelling. The assistant prosecuting attorney, in his
argument to the jury, referred to the defendants' failure to give
any explanation at the time of arrest. The Court of Appeals,
V. J. Brennan and Bashara, JJ. (N. J. Kaufman, P.J., dissent-
ing), affirmed in an unpublished per curiam opinion on the
ground that while allowing the references to the defendants'
silence was error, the error was harmless beyond a reasonable
doubt (Docket No. 29476). Defendant Robert Sain applies for
leave to appeal. *Held:*

Conduct which directly or indirectly restricts the exercise of
the constitutional right to remain silent in the face of accusa-
tion will not be condoned. "Nonutterances" are not statements.
The question asked by the assistant prosecutor of the arresting
officer in this case did not solicit a comment upon the defen-
dant's silence at the time of his arrest. The unresponsive
answer to a general question does not appear to have been a
studied attempt by the prosecution to place the matter before
the jury. However, even a cursory perusal of the assistant
prosecutor's remarks to the jury reveals that he seized upon
the answer and used it to maximum advantage. He clearly and
repeatedly asked the jury to consider the defendant's silence as
a factor in favor of a finding of guilt. This argument denied the
defendant a fair trial.

Justice Williams concurred on the ground that whether or
not permitting the jury to hear the unresponsive answer of the
witness was erroneous, permitting the prosecutor's argument

about the defendant's silence in the face of an accusation was erroneous.

The judgment of the Court of Appeals is reversed, and the case is remanded to the Recorder's Court of Detroit for a new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Don W. Atkins,* Assistant Prosecuting Attorney, for the people.

*Maxwell & Sniderman* for defendant.

PER CURIAM. Charged with breaking and entering with the intent to commit larceny,[1] the defendant was convicted by a jury of entering without breaking with the intent to commit larceny.[2] Because the record discloses that the prosecutor utilized a portion of his closing argument to improperly comment upon the defendant's exercise of his right to remain silent at the time of his arrest, we reverse.

Two policemen, having been called by a postman, went to the back door of a four-family dwelling and observed the defendant and his son, in the words of the policeman, "disassembling the stove". The building was a vacant one, and its owner was rehabilitating it for future rentals. The arresting officer had watched the two men work with the stove for three to five minutes before he entered the building and made the arrests.

The defendant did not testify. However, the defense presented evidence from defendant's son, Michael Sain, to the effect that he and the defendant had been driving in the neighborhood, that

[1] MCL 750.110; MSA 28.305.

[2] MCL 750.111; MSA 28.306.

they saw the abandoned building, heard noises emanating from it, and went inside in hope of buying a door jamb from persons who were working in the building.

During the course of the examination of one of the arresting officers, the prosecutor asked the following question and received the following response:

"*Q. [Assistant Prosecutor]:* What occurred once you entered the building?

"*A.* We discovered the two defendants in the kitchen. We asked them whether or not they had—whether or not it's their property, they had permission from the property owner to be in there; [if] in fact they did know who owned the building. *Neither of them responded to my questions* and I advised them at that time they were under arrest." (Emphasis added.)

Later, during the prosecutor's closing argument, it was stated:

"* * * and once they [the police] went into the house the noise only stopped when they entered the kitchen, just prior to them entering the kitchen. The only people that were in the kitchen they testified were Misters Sain. At that time they had no tools in their hands because they probably heard both the officers approach. Then they stood up and started to walk out or attempted to walk out when the police officers saw them and they asked them to stop. They did. They were both asked explanation why were they on the premises. *No one said* I was given permission. *No one said* I owned the premises. *No one said* we were just here to look and see if we could get a door jamb. They did talk to the police officer later but not at the scene there." (Emphasis added.)

The defendant argues that the above-quoted colloquy and closing argument violated the rule an-

nounced in *People v Bobo,* 390 Mich 355, 359; 212 NW2d 190 (1973). In *Bobo* we stated:

"We will not condone conduct which directly or indirectly restricts the exercise of the constitutional right to remain silent in the face of accusation. 'Nonutterances' are not statements. The fact that a witness did not make a statement may be shown only to contradict his assertion that he did."

The Court of Appeals majority, in affirming the defendant's conviction, noted first of all that no objections were lodged at trial with regard to the examination of the police officer or the prosecutor's closing argument. Nevertheless, the majority found *Bobo* error but concluded that upon the record it was harmless. Judge KAUFMAN, in dissent, also found *Bobo* error but could not agree that the error was harmless. Judge KAUFMAN indicated that it was his opinion that the evidence was not so overwhelming as to offset the prejudicial effect of the prosecutor's remarks. He also opined that *Bobo* error is offensive to the maintenance of a sound judicial process and thus should not be the subject of a harmless error inquiry.

Were the only question before us the propriety of the colloquy between the prosecutor and the police officer, we might not reverse. The question posed by the prosecutor did not solicit a comment upon the defendant's silence at the time of his arrest. The officer's unresponsive answer to a general question does not appear to have been a studied attempt by the prosecution to place this matter before the jury.

However, the same cannot be said of the prosecutor's closing argument. Even a cursory perusal of the prosecutor's remarks, set forth earlier in this opinion, reveals that the prosecutor seized

upon the response of the police officer and used it to maximum advantage. The prosecutor clearly and repeatedly asked the jury to consider, as a factor in favor of a finding of guilt, that the defendant, when confronted by the police at the time of his arrest, remained silent. We are persuaded that this argument denied the defendant a fair trial.

Therefore, in lieu of granting leave to appeal, pursuant to GCR 1963, 853.2(4), we reverse the judgments of the Court of Appeals and Recorder's Court and remand the case to Recorder's Court for a new trial.

COLEMAN, C.J., and KAVANAGH, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred.

WILLIAMS, J. Whether the alleged unresponsive answer was or was not *Bobo* error, the prosecutor's closing argument was *Bobo* error and, therefore, I concur.