PEOPLE v KARAM

Docket No. 47724. Submitted February 4, 1981, at Detroit.—Decided
    May 19, 1981. Leave to appeal applied for.

Fred Karam was convicted of soliciting another person to commit
    assault with intent to do great bodily harm less than murder in
    Wayne Circuit Court, Patrick J. Duggan, J. Judge Duggan
    denied the defendant's motion for a new trial. The defendant
    appeals alleging that (1) reversible error was committed be-
    cause the prosecutor was allowed to question the defendant
    concerning his prearrest silence in the face of an incriminating
    statement made by an accomplice and that the prosecutor
    exacerbated this error in his rebuttal argument by asking the
    jury to infer that the defendant was guilty from this silence,
    and (2) the trial court abused its discretion in allowing im-
    peachment of the defendant's testimony by evidence of a 1969
    conviction under the federal firearm act for being an ex-felon in
    possession of a firearm. Held:

    1. There was no error in the prosecutor's use of the defen-
    dant's silence. Here, the defendant's initial silence was not
    indicative of an intent to exercise the right to remain silent
    because at the time the alleged incriminating statement was
    made the defendant apparently did not feel accused.

    2. The trial court abused its discretion in allowing evidence
    of the 1969 federal firearm conviction to be used to impeach the
    defendant. However, in light of the fact that the prosecuting
    attorney still could have permissibly used evidence of three

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 6] 29 Am Jur 2d, Evidence § 638 *et seq.*
    Admissibility of inculpatory statements made in presence of ac-
        cused to which he refuses to answer on advice of counsel. 77
        ALR2d 463.
[3] 81 Am Jur 2d, Witnesses § 570.
[4, 5] 29 Am Jur 2d, Evidence § 327.
    81 Am Jur 2d, Witnesses §§ 569, 570, 571.
    Construction and application of Rule 609(a) of the Federal Rules of
        Evidence permitting impeachment of witnesses by evidence of
        prior conviction of crime. 30 ALR Fed 570.

convictions to impeach the defendant and given that the defendant chose to testify, the error was harmless.

Affirmed.

M. F. Cavanagh, J., dissented. He would not hold that the defendant's silence was properly used as substantive evidence of guilt since here it does not clearly appear that the defendant understood and unambiguously assented to the incriminating statement made by the accomplice. He would reverse and remand for a new trial.

### Opinion of the Court

1. Criminal Law — Silence in the Face of Accusation — Evidence — Constitutional Law.

A criminal defendant's absolute silence in the face of accusation, whether prior to or after arrest and whether the accuser is a police officer or a private citizen, cannot be used as substantive or impeaching evidence consistent with Fifth Amendment guarantees that no person can be compelled to act as a witness against himself.

2. Criminal Law — Defendant's Silence — Substantive Evidence — Impeachment Purposes.

The following principles are applicable to the issue of whether a defendant's silence can be used for substantive evidence or impeachment purposes: (1) the absolute silence of a defendant is never admissible in a criminal case for substantive or impeachment purposes, (2) where a defendant has made some statement and the questioning concerns omissions from the statement the questions are proper for impeachment, and (3) where from the circumstances surrounding a statement it is clear that defendant's nonutterance reflects an admission of wrongdoing, it may be used as substantive evidence.

3. Criminal Law — Cross-Examination — Vacated Conviction.

A judge's permitting cross-examination of a defendant concerning a previously vacated conviction of the defendant constitutes error.

4. Criminal Law — Prior Convictions — Impeachment Evidence.

The following factors must be considered by the trial judge before allowing evidence of a witness's prior felony conviction to be used for impeachment purposes: (1) the nature of the prior offense (did it involve an offense which directly bears on credibility, such as perjury?), (2) whether it is for substantially the same conduct for which the defendant is on trial (are the offenses so closely related that the danger that the jury will

consider the defendant a "bad man" or infer that because he was previously convicted he likely committed this crime, and therefore create prejudice which outweighs the probative value on the issue of credibility?), and (3) the effect on the decisional process if the accused does not testify out of fear of impeachment by evidence of prior convictions (are there alternative means of presenting a defense which would not require the defendant's testimony, *i.e.*, can his side of the story be presented or are there alternative, less prejudicial means of impeaching the defendant?).

5. CRIMINAL LAW — EVIDENCE OF PRIOR CONVICTION — POSSESSION OF FIREARM — VERACITY — CREDIBILITY.

Evidence of a witness's prior conviction for possession of a firearm has very little bearing on the question of that witness's veracity and credibility.

DISSENT BY M. F. CAVANAGH, J.

6. CRIMINAL LAW — SILENCE IN THE FACE OF ACCUSATION — EVIDENCE OF GUILT.

*A criminal defendant's silence in the face of accusation should not be used as substantive evidence of guilt where it does not clearly appear that the defendant understood and unambiguously assented to the accusation.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *A. George Best, II,* Assistant Prosecuting Attorney, for the people.

*Kim Robert Fawcett,* Assistant State Appellate Defender, for defendant on appeal.

Before: BRONSON, P.J., and M. F. CAVANAGH and N. J. KAUFMAN, JJ.

BRONSON, P.J. Following a jury trial in the Wayne County Circuit Court, defendant was convicted of soliciting another to commit the crime of assault with intent to do great bodily harm less than murder, to-wit: the breaking of the kneecaps

of Angelo Comito or members of his family. MCL 750.157b; MSA 28.354(2) and MCL 750.84; MSA 28.279. Defendant was sentenced to a term of three to ten years in prison. His motion for a new trial was denied on July 6, 1979. Defendant appeals as of right.

The proofs presented at trial showed that the following occurred. Defendant hired Charles Prebee and Gilbert Richard to break the knees of his father-in-law, Angelo Comito. Defendant blamed Comito for marital difficulties that the defendant was experiencing with his wife.

On April 8, 1978, Prebee and Richard entered the home of Isabelle and Angelo Comito. Either Prebee or Richard carried a gun. They announced a holdup. However, the Comitos' daughter, defendant's estranged wife, was also on the premises. The pair had not expected her to be at the house and abruptly fled.

Prebee and Richard decided defendant might be satisfied with merely obtaining some money from Comito. Consequently, they decided to extort $5,000 from him. When the pair went to collect the money they were arrested. Each pled guilty to extortion in return for a year's probation and agreed to testify against defendant. Furthermore, Prebee and Richard were each granted immunity from prosecution on a conspiracy charge to break Comito's kneecaps.

I

Defendant first contends that the prosecutor committed reversible error by questioning him concerning his prearrest silence in the face of an incriminating statement made by an accomplice and exacerbated this error in his rebuttal argu-

ment by asking the jury to infer guilt from this silence.

A conversation between defendant (Mr. Bommarito), Richard, and Prebee was played for the jury. One excerpt indicated:

> "*Mr. Bommarito:* What do you mean, a lot of money? What did they get you for?
> "*Mr. Prebee:* Huh?
> "*Mr. Bommarito:* What did they get you for?
> "*Mr. Prebee:* Extortion.
> "*Mr. Bommarito:* What do you mean, extortion, where do you get extortion from?
> "*Mr. Prebee:* We tried, you know, like I say, we tried to set it up so he could meet us there at St. Clair Shores.
> "*Mr. Bommarito:* That's not extortion.
> "*Mr. Prebee:* Yeah, but we were going to break his knees, like you said, he came, and we said, we'd try to get him there by luring him away with money, told him we wouldn't bother him if he gave us some money and when he came there the police got us.
> "*Mr. Bommarito:* I didn't tell you to ask him for any fucking money."

In a later portion of the conversation, defendant vigorously protested any involvement in the extortion attempt. He also corrected Mr. Richard's use of the term "hit" in relation to the assault on his father-in-law, stating that "hitting means knocking them off". Defendant subsequently did not respond to Richard's statement, which was: "Well, okay, breaking his leg, his knees then".

During cross-examination, the prosecutor asked defendant why he did not deny telling Richard and Prebee to break Angelo Comito's legs. During his rebuttal argument, the prosecutor stated:

> "Let me conclude with a couple of other thoughts.

First of all, as you listen to the second tape, the one from August 31st, you will hear Prebee saying something to the effect: Well, you told us to go break the legs and so and so and so and so. And Bommarito comes back and said: I never had anything to do with the extortion.

"Now, it seems to me that most people, if someone said to them: Hey, Charley, you told me to go out and break his legs and if Charley didn't have anything to do with this leg breaking or it wasn't his idea at all and he had never heard of it, the first thing he would say is: What in the hell are you talking about? I didn't tell you to do anything about breaking legs.

"A human being's natural reaction to that kind of suggestion, if the suggestion is false, is to say: I didn't have anything to do with that, what are you talking about, breaking legs. I never told you to break any legs. I told you to go talk to the guy and scare him a little bit. That's not what Bommarito does. Bommarito doesn't say anything about the accusation of breaking legs. He just goes on to say: I didn't have anything to do with the extortion.

"Well, no one said he had anything to do with the extortion."

In *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973), the Michigan Supreme Court ruled that a defendant's silence in the face of accusation—whether prior to or after arrest and whether the accuser is a police officer or a private citizen—cannot be used as evidence consistent with Fifth Amendment guarantees that no person can be compelled to act as a witness against himself. The Court in *Bobo* held that a defendant's silence is inadmissible as either substantive or impeaching evidence. *Bobo* was recently reaffirmed by the Michigan Supreme Court in *People v Sain,* 407 Mich 412; 285 NW2d 772 (1979).

Recent decisions by the United States Supreme Court render *Bobo* of dubious precedential value relative to the proper construction of the Fifth

Amendment.[1] In *Jenkins v Anderson,* 447 US 231; 100 S Ct 2124; 65 L Ed 2d 86 (1980), the Court ruled that Federal constitutional law did not prohibit the states from allowing impeachment by evidence of prearrest silence. Rather, each of the states could resolve this question as they saw fit through evidentiary rules. In *Anderson v Charles,* 447 US 404; 100 S Ct 2180; 65 L Ed 2d 222 (1980), the Court held that a defendant who gave his version of the events at trial, but had earlier given police inconsistent statements concerning certain aspects of the transaction and had failed to say anything about other events, could be impeached by both the post-arrest inconsistencies and silence. By so holding in *Jenkins* and *Anderson,* the United States Supreme Court took a restrictive view of their decision in *Doyle v Ohio,* 426 US 610; 96 S Ct 2240; 49 L Ed 2d 91 (1976). In *Doyle,* the Court ruled that post-arrest silence is "insolubly ambiguous" due to the requirement that defendants be given *Miranda*[2] warnings. *Doyle* was distinguished in *Jenkins* on the basis that no governmental action induced defendant to remain silent, since prearrest nonutterances were involved. *Doyle* was distinguished in *Anderson* on the theory that, once defendant has made some post-arrest statements, he has not chosen to remain silent. Thus, the questioning is fair since defendant voluntarily spoke after receiving *Miranda* warnings.

Since the prosecutor in the instant case used defendant's silence as substantive evidence of guilt, rather than for mere impeachment purposes, *Jenkins* and *Anderson* do not dispose of the consti-

[1] The Michigan Supreme Court was also construing Const 1963, art 1, § 17 in *Bobo.* It is possible that even in light of the United States Supreme Court precedent, the Michigan Supreme Court would continue to adhere to *Bobo* as a matter of state constitutional law.

[2] 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

tutional issue. Moreover, even had evidence of the statements been used solely for impeachment, it is not obvious that the Michigan Supreme Court would renounce *Bobo* as a matter of state constitutional law.

Numerous decisions from this Court provide that *Bobo* is inapplicable where defendant does make a statement and the questioning concerns omissions from the statement. The majority of these opinions, however, involve the use of silence for impeachment purposes where some statement has been made. See, *People v Richendollar,* 85 Mich App 74, 82; 270 NW2d 530 (1978), *lv den* 405 Mich 820 (1979), *People v Whitty,* 96 Mich App 403, 420; 292 NW2d 214 (1980), *People v Gerald Wells,* 102 Mich App 558; 302 NW2d 232 (1980). Here, the prosecutor used silence as both substantive and impeachment evidence. The tape recording of the conversation was introduced during the prosecution's case in chief, and the prosecutor urged the jurors to infer guilt from defendant's failure to deny hiring Prebee and Richard to break his father-in-law's knees.

The prosecutor, then, wanted the jury to use defendant's silence as an adoptive admission. Two recent decisions from this Court have broadly stated that tacit admissions or adoptive admissions through silence are not applicable in criminal cases. *People v Washington,* 100 Mich App 628, 630; 300 NW2d 347 (1980), *People v Hurd,* 102 Mich App 424; 301 NW2d 881 (1980). Another panel of this Court held in *People v Dietrich,* 87 Mich App 116, 130-131; 274 NW2d 472 (1978), that while adoptive admissions are not favored in criminal cases, they may be admissible where it unambiguously appears defendant assented to the statement made.

We believe that the blanket rule adopted by *Washington* and *Hurd* inaccurately states current Michigan law. MRE 801(d)(2)(B) provides that adoptive admissions are admissible subject to the rule of *Bobo, supra.* Thus, the key to understanding to what extent adoptive admissions may be used in criminal cases turns on how *Bobo* is to be construed.[3] We are convinced that *Bobo* was not intended to preclude the use of adoptive admissions in all situations.

*Bobo* involved true nonutterances. That is, Bobo remained absolutely silent after receiving *Miranda* warnings. Here, defendant vehemently denied an intent to extort money from or to kill his father-in-law, but did not deny that he desired Comito's knees broken. If, as this Court has held, nonutterances can be used to impeach where they concern omissions from affirmative statements, given that *Bobo,* itself, does not distinguish the use of nonutterances for impeachment and substantive evidence of guilt, it must also be proper to use such nonutterances as substantive evidence where total silence is not maintained. In light of *Bobo,* either both or neither must be permissible. *Dietrich, supra,* implicitly recognizes this fact.

We also agree with *Dietrich, supra,* 130, fn 1, that it is significant that defendant's initial silence was not indicative of an intent to exercise the right to remain silent. At the time that defendant failed to deny hiring Prebee and Richard to break his father-in-law's knees, it is apparent that he believed he was merely conversing with faithful accomplices engaged in a joint criminal venture.

[3] To whatever extent *Bobo* has been undermined by *Jenkins* and *Anderson, supra,* as to the interpretation it gives the Fifth Amendment, the Michigan Supreme Court explicit adoption of *Bobo* as a limitation on the use of adoptive admissions continues to give that decision evidentiary significance.

This is not really a case of silence or partial silence in the face of accusation because defendant apparently did not feel accused. The case of *People v Bigge,* 288 Mich 417; 285 NW 5 (1939), is not applicable to this case because here it is a certainty that defendant heard the statement concerning his hiring of Prebee and Richard to break Comito's knees. This statement was repeated more than once, and, while defendant was careful to deny certain inaccuracies in the conversation, the hiring of Prebee and Richard was never denied.

We conclude that the following principles can be derived from the Michigan cases considering this issue: (1) that the absolute silence of a defendant is never admissible in a criminal case for substantive or impeachment purposes; (2) that, where a defendant has made some statement and the questioning concerns omissions from the statement, the questions are proper for impeachment; and (3) that, where from the circumstances surrounding a statement it is clear that a defendant's nonutterance reflects an admission of wrongdoing, it may be used as substantive evidence.[4] We find no error

---

[4] It is important to understand the difference between nonutterances admissible pursuant to the second and third principles. Suppose defendant made a statement to the police denying his involvement in the crime and said he was at his home when the incident occurred. If, at trial, defendant presented an alibi defense and testified that X, Y, and Z were all with him when the offense was supposedly committed, the prosecution could permissibly cross-examine defendant about his failure to mention X, Y, and Z in his initial statement. This nonutterance, however, would manifestly not provide substantive evidence of guilt. Instead, it would merely cast doubts on defendant's initial statement and credibility. This would be the use of silence where a statement has been made pursuant to principle two. It would be clear error for the prosecutor to urge the jury to infer guilt due to the inconsistency between defendant's trial testimony and the omission from his statement to the police. However, in cases such as the one at bar, where defendant denies involvement in one crime or type of wrongdoing, while remaining silent about his involvement in other wrongdoing in which he has also been implicated, the prosecutor can urge that the nonutterance be considered substantive evidence of guilt. Of course, prior to use of the nonutterance as substantive

in the use of the nonutterance on the facts of this case.

## II

Defendant also contends that the trial court abused its discretion in allowing his impeachment by evidence of a 1969 conviction under the federal firearm act for being an ex-felon in possession of a firearm. Prior to trial, defense counsel moved to suppress from evidence his client's criminal record. This motion was denied, except for convictions prior to January 29, 1969. This was apparently done to comply with the ten-year rule of MRE 609(b). Trial was originally scheduled for January 29, 1979. Thus, the prosecution was allowed to impeach defendant with evidence of two federal firearm violations, making false application to purchase a pistol and falsely representing employment in an application for a license as a security guard.

Apparently, the 1969 firearm conviction was vacated in 1972. This was known by neither defense counsel nor the prosecutor at the time of trial. We have held in the past that permitting cross-examination of a defendant concerning a vacated conviction constitutes error. *People v Wilson,* 43 Mich App 459, 463; 204 NW2d 269 (1972), *lv den* 393 Mich 813 (1975). However, in *Wilson* the status of the conviction was known prior to questioning. Since we agree with defendant that allowing impeachment via the 1969 firearm conviction constituted an abuse of discretion pursuant to *People v Crawford,* 83 Mich App 35; 268 NW2d 275 (1978), we do not reach the issue of when, if

evidence it must be clearly establishd that defendant assented to the accuracy of the statement made by his silence. *Dietrich, supra.*

ever, the use of a vacated conviction constitutes error on facts like those of the instant case.

In *Crawford, supra,* 39, this Court set forth the standards which must be considered prior to allowing evidence of prior convictions to be used for impeachment. The Court said:

"The factors which the judge must weigh in making his determination include: (1) the nature of the prior offense (did it involve an offense which directly bears on credibility, such as perjury?), (2) whether it is for substantially the same conduct for which the defendant is on trial (are the offenses so closely related that the danger that the jury will consider the defendant a 'bad man' or infer that because he was previously convicted he likely committed this crime, and therefore create prejudice which outweighs the probative value on the issue of credibility?), and (3) the effect on the decisional process if the accused does not testify out of fear of impeachment by prior convictions (are there alternative means of presenting a defense which would not require the defendant's testimony, *i.e.,* can his side of the story be presented, or are there alternative, less prejudical means of impeaching the defendant?)."

Considering the first factor, possession of a firearm has very little bearing on the question of a witness's veracity and credibility. The second factor does not cut heavily either way. The firearm charge was not substantially similar to the charged offense. At the same time, jurors might have speculated that defendant's possession of the firearm was for the purpose of effecting some violent act. As to the third factor, had defendant failed to testify, his version of the events would not have been told. Moreover, considering that the two charges involving false statements were more directly applicable to credibility, a less prejudicial means of impeachment existed. Finally, since de-

fendant had two federal firearm convictions, given
their minimal value as evidence of veracity, at
most, only one of the two convictions should have
been used.

We are not unmindful of decisions which state
that absent an affirmative misapplication of the
*Crawford* factors, this Court will not find an abuse
of discretion. *People v Roberson,* 90 Mich App 196,
202; 282 NW2d 280 (1979), *lv den* 407 Mich 908
(1979), *People v Wakeford,* 94 Mich App 249, 251;
288 NW2d 381 (1979). On this proposition, how-
ever, the various members of this Court have
differing views. Some cases have been reversed
where there has been no affirmative misapplica-
tion of the *Crawford* factors on the record. *People
v Bennett,* 85 Mich App 68, 72; 270 NW2d 709
(1978), *lv den* 405 Mich 835 (1979), *People v Feath-
erstone,* 93 Mich App 541, 544; 286 NW2d 907
(1979), *People v Henry,* 101 Mich App 585; 300
NW2d 639 (1980). See, also, *Roberson, supra,* 204-
208 (D. C. RILEY, J., dissenting). We are convinced
that the recent addition of subsection 2 to MRE
609(a) envisions a more active appellate review of
the trial court's exercise of discretion relative to
the admission of evidence of prior convictions than
is recognized by *Roberson* or *Wakeford.*

Although we conclude that the trial court
abused its discretion in allowing evidence of the
1969 federal firearm conviction to be used, this
error is subject to the harmless error test. Thus, in
*People v Tucker,* 86 Mich App 608; 273 NW2d 498
(1978), *lv den* 406 Mich 964 (1979), we found
harmless error where the trial court ruled that the
prosecutor could use evidence of two void convic-
tions for impeachment purposes, where the prose-
cutor still had evidence of five valid and more
recent larceny convictions which could be permis-

sibly used to impeach. We are convinced that, in light of the fact that the prosecution still could have permissibly used evidence of three convictions to impeach defendant and given that defendant chose to testify, the error was harmless. In light of defendant's other convictions, it is not reasonable to conclude that the improper use of evidence of the one conviction affected the outcome of the case.

Affirmed.

N. J. KAUFMAN, J., concurred.

M. F. CAVANAGH, J. *(dissenting).* I dissent from the majority's holding that defendant's silence was properly used as substantive evidence of guilt. I would distinguish *People v Dietrich,* 87 Mich App 116; 274 NW2d 472 (1978), on the basis that we do not have here a situation where "it clearly appears that the defendant understood and *unambiguously assented* to the statement made * * *". *Dietrich, supra,* 131. (Emphasis added.)

For the reasons stated in *People v Washington,* 100 Mich App 628; 300 NW2d 347 (1980), *People v Norris,* 74 Mich App 361; 253 NW2d 767 (1977), and *People v Hurd,* 102 Mich App 424; 301 NW2d 881 (1980), and because credibility was crucial in this case, I would reverse and remand for a new trial.