PEOPLE v GALLON

PEOPLE v McGEE

Docket Nos. 57826, 57830. Submitted June 8, 1982, at Detroit.—Decided November 4, 1982.

Edward Gallon, Jr., and Thomas McGee, Jr., were convicted of armed robbery, Wayne Circuit Court, Harry J. Dingeman, Jr., J. During the prosecution's case in chief, a police detective, in response to a question posed by the prosecution, testified that defendant McGee, after having been read his rights and signing a form indicating such, initially began to answer questions posed by the detective but after being specifically asked whether he was at the location of the robbery indicated that he did not want to "talk anymore". The court denied the defendants' motion for a mistrial and instructed the jury to disregard the detective's answer regarding McGee's desire to stop talking. The defendants appealed. The Court of Appeals consolidated the cases. *Held:*

The defendants' convictions should be reversed. Defendant McGee's exercise of his right to remain silent should not have been conveyed to the jury because the jurors may have drawn an inculpatory inference from MCGee's refusal to answer the detective's further questions. The reference to McGee's assertion of his right to remain silent cannot be justified as impeachment because the testimony regarding McGee's assertion of that right was elicited before McGee testified. Furthermore, the error was not harmless because the prosecutor's conduct in injecting the error was either deliberate or flagrantly negligent and the Court of Appeals could not conclude that not even one juror would have voted to acquit McGee if that testimony had

REFERENCES FOR POINTS IN HEADNOTES

[1-4] 29 Am Jur 2d, Evidence § 640.

75 Am Jur 2d, Trial § 221.

[4] 5 Am Jur 2d, Appeal and Error §§ 778, 783-792.

[5] 21A Am Jur 2d, Criminal Law §§ 703, 937.

[6] 81 Am Jur 2d, Witnesses § 37.

Inferences arising from refusal of witness other than accused to answer question on the ground that answer would tend to incriminate him. 24 ALR2d 895.

not been elicited. The evidence of guilt was not so overwhelming that the error was harmless beyond a reasonable doubt, and the instruction to the jury to disregard the detective's testimony did not cure the error. The improper testimony concerning defendant McGee's assertion of his privilege against self-incrimination was inherently prejudicial to defendant Gallon's defense and Gallon's conviction should also be reversed.

Reversed and remanded.

1. CRIMINAL LAW — RIGHT TO REMAIN SILENT.

A defendant has a right to exercise his right to remain silent prior to or at the time of his arrest; such nonutterance is not a statement, and the fact that the defendant chooses to remain silent may not be elicited by a prosecutor during trial or be commented upon during his closing argument except where the defendant asserts that he made a statement; to allow the prosecutor to use an accused's silence against him at trial would place an impermissible penalty on the exercise of his right against self-incrimination.

2. CRIMINAL LAW — RIGHT TO REMAIN SILENT — IMPEACHMENT.

A reference during a trial by a prosecutor to the exercise by a criminal defendant of his right to remain silent cannot be justified as impeachment where the defendant has not yet testified, and its admission into evidence by a trial court constitutes error.

3. CRIMINAL LAW — RIGHT TO REMAIN SILENT.

Error resulted where in a criminal case a defendant's exercise of his right to remain silent was conveyed to the jury and where although the defendant answered a police detective's initial questions he asserted his right to remain silent when the detective asked him if he was at the scene of the crime and the jurors may have drawn an inculpatory inference from being informed of the defendant's refusal to answer the detective's further questions.

4. CRIMINAL LAW — HARMLESS ERROR.

The standard for determining whether error committed during a criminal trial is reversible on appeal or is merely harmless involves an inquiry as to whether the error is so offensive to the maintenance of a sound judicial system as to require reversal and, if not, whether it is harmless beyond a reasonable doubt; the purpose of the first criterion is to deter prosecutorial and police misconduct; an error may be intolerably offensive to the maintenance of a sound judicial system if it was deliber-

ately injected into the proceedings by the prosecutor, if it deprives the defendant of a fundamental element of the adversary process, or if it is of a particularly inflammatory or persuasive kind; the purpose of the second criterion of the test for harmless error is to safeguard the decisional process.

5. CRIMINAL LAW — CONSTITUTIONAL LAW — PROSECUTION WITNESSES — SELF-INCRIMINATION.

A criminal defendant has no standing either to claim the privilege against self-incrimination for a prosecution witness or to complain about an error by a trial judge who overrules the witness's attempt to assert the privilege.

6. CRIMINAL LAW — WITNESSES — RIGHT TO REMAIN SILENT.

It is inherently prejudicial to place a witness on the stand who is intimately related to the criminal episode at issue when it is known that the witness will assert his privilege against self-incrimination, for there is a danger that an adverse inference may be drawn against the accused from the exercise of the privilege.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *A. George Best, II,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Peter Jon Van Hoek),* for defendants on appeal.

Before: J. H. GILLIS, P.J., and WAHLS and R. H. BELL,* JJ.

PER CURIAM. Defendants were convicted by a jury of armed robbery, MCL 750.529; MSA 28.797. They appeal as of right.

On August 16, 1980, two men robbed a Pic-Way shoe store in Southgate. During the robbery, one of the robbers showed a store employee a can of "mace". The man also claimed to have a knife. Shortly after the robbery, the defendants were

---

* Circuit judge, sitting on the Court of Appeals by assignment.

apprehended by the police. The automobile which defendant McGee had been driving matched the description of the getaway vehicle. Defendant Gallon was found lying on the floor of the back seat of the automobile, apparently changing his clothes. The stolen merchandise and money were found in the automobile, along with clothes matching those worn by the robbers. A can of mace and a knife were found inside a jacket taken from the automobile. A lineup was held at the police station three days after the robbery. However, the three store employees who had witnessed the robbery failed to pick the defendants out of the lineup.

The defendants' first trial ended in a hung jury. The second trial resulted in the defendants' convictions.

During the prosecution's case in chief in the second trial, the following exchange occurred between the prosecutor and a police detective assigned to the case:

"*Q.* Did you have occasion to see Mr. McGee at any time after you were assigned to the case?

"*A.* Yes, sir.

"*Q.* And where did you see Mr. McGee or speak to Mr. McGee?

"*A.* In the Southgate Police Department in the interview room of the Southgate Detective Bureau.

"*Q.* And can you tell us what happened at that time?

"*A.* Yes, sir, I brought the subject in and advised him of his constitutional rights. That would be sometime around 11:30, 11:35 a.m. of that morning.

"*Q.* And then what happened?

"*A.* After advising the subject of his rights and he read the form and initiated the form that he understood each line and he signed the document. I then asked him if he would object to answering any questions in regards to the complaint that we had where he was arrested. I asked him specifically what he was

doing in this area. He said that he knew some people from this area. I said, 'Where had you been'. He said he had been around the Southgate Shopping Center, he was looking to buy some shoes for a lady friend. Then I asked him specifically if he had been in the Pic-Way Shoe Store. He said, 'I don't want to talk anymore'. That was the end of our conversation."

Defense counsel objected to the testimony and moved for a mistrial. The trial judge denied the motion and instructed the jury to disregard the detective's last answer. Defendants contend that the prosecution committed error by deliberately eliciting the testimony concerning defendant McGee's refusal to answer the detective's questions.

Michigan courts have repeatedly held that silence of an accused in the face of police questioning may not be used against the accused at trial, subject to the exception that evidence of a refusal to speak during police questioning is admissible to contradict assertions that a statement was made. *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973); *People v Hoshowski,* 108 Mich App 321; 310 NW2d 228 (1981); *People v Wade,* 93 Mich App 735; 287 NW2d 368 (1979), *lv den* 408 Mich 941 (1980); *People v Norris,* 74 Mich App 361; 253 NW2d 767 (1977), *lv den* 401 Mich 832 (1977). To otherwise allow the prosecutor to use an accused's silence against him at trial would place an impermissible penalty on the exercise of the accused's right against self-incrimination. *Norris, supra,* p 365; *People v Swan,* 56 Mich App 22, 31; 223 NW2d 346 (1974), *lv den* 395 Mich 810 (1975).

In the case at bar, the testimony regarding defendant McGee's assertion of his right to remain silent was elicited before defendant McGee testified. Accordingly, the reference to McGee's assertion of his right to remain silent cannot be justi-

fied as impeachment. *People v Jordan,* 105 Mich App 345, 348; 306 NW2d 506 (1981); *People v Parks,* 57 Mich App 738, 746; 226 NW2d 710 (1975).

The prosecutor argues that no error as found in *Bobo* occurred in the present case because defendant McGee did not remain silent, but chose to answer the detective's initial questions. We find this argument to be without merit. Although defendant McGee was willing to answer the detective's initial questions, he asserted his right to remain silent when the detective asked him if he was at the scene of the crime. This fact was conveyed to the jury through the detective's testimony. Since the jurors may have drawn an inculpatory inference from defendant McGee's refusal to answer further questions, the detective's testimony was improper. *People v Hoshowski, supra,* p 324; *People v Jordan, supra,* p 348. It does not matter that defendant McGee answered the detective's initial questions. Defendant McGee's exercise of his right to remain silent should not have been conveyed to the jury. *People v Hoshowski, supra.*

The prosecutor also claims that the error was harmless. In determining whether error was harmless, we employ a dual inquiry. First, was the error so offensive to the maintenance of a sound judicial system as to require reversal and second, if not, was the error harmless beyond a reasonable doubt? *People v Swan, supra,* pp 31-32. The purpose of the first criterion is to deter prosecutorial and police misconduct. *People v Wright (On Remand),* 99 Mich App 801, 810-811; 298 NW2d 857 (1980). An error may be intolerably offensive to the maintenance of a sound judicial system if it was deliberately injected into the proceedings by the prosecutor, if it deprives the defendant of a fundamental element of the adversary process, or

if it is of a particularly inflammatory or persuasive kind. *People v Swan, supra,* p 32. The purpose of the second criterion of the harmless error test is to safeguard the decisional process. Thus, if it is reasonably possible that in a trial free of the error complained of even one juror would have voted to acquit, the error was not harmless. *People v Wright, supra,* pp 810-811; *People v Swan, supra,* 33.

In *Swan,* this Court issued the following warning:

"We will find it difficult in the future to believe that prosecutors and police are ignorant of the well-established principle of law which forbids comment upon an accused's silence or that clear violations of the principle arise from inadvertence. Deliberate violations of this rule may lead us to reverse convictions even where evidence might be overwhelming. The prosecutor who comments, or elicits comment, on a defendant's silence thus risks the loss of a perfectly good case for no reason." 56 Mich App 35.

In the instant case, the error could be deemed harmless if the testimony regarding defendant McGee's refusal to answer further questions was unsolicited or an unresponsive answer. *People v Sain,* 407 Mich 412, 415; 285 NW2d 772 (1979); *People v Hoshowski, supra,* p 324. However, it is clear from the record that the detective's testimony was solicited and responsive. We find that the prosecutor's conduct in injecting the error was either deliberate or flagrantly negligent and, therefore, the error cannot be found harmless under the first prong of the test. *People v Hoshowski, supra; People v Norris, supra,* pp 366-367. Moreover, we cannot say that not even one juror would have voted to acquit defendant McGee if

this testimony had not been elicited. As stated above, three eyewitnesses to the robbery failed to pick out the defendants at a lineup held three days after the robbery, and the defendants' first trial ended in a hung jury, indicating that the evidence of guilt was not so overwhelming that the error was harmless beyond a reasonable doubt. Furthermore, we cannot find that the short jury instruction to disregard the detective's testimony cured the error. See *People v Poma,* 96 Mich App 726, 732-733; 294 NW2d 221 (1980). Accordingly, we reverse defendant McGee's conviction.

The sole question remaining is whether defendant Gallon's conviction must be reversed due to the error. The prosecutor contends that Gallon has no standing to raise the issue of the violation of defendant McGee's right to remain silent. It is true that a defendant has no standing to either claim the privilege against self-incrimination for a witness or to complain about an error on the part of the trial judge in overruling the witness's attempt to assert it. *People v Poma, supra,* p 730; *People v St Onge,* 63 Mich App 16, 18; 233 NW2d 874 (1975). However, defendant Gallon can still claim that the testimony regarding defendant McGee's exercise of his right against self-incrimination prejudiced the defendant. See *People v Poma, supra,* 730.

In *Poma,* this Court held that it is inherently prejudicial to place a witness on the stand who is intimately related to the criminal episode at issue, when it is known that the witness will assert his privilege against self-incrimination, for there is a danger that an adverse inference may be drawn against the accused from the exercise of the privilege. *Poma, supra,* pp 730-733. See also *People v Giacalone,* 399 Mich 642, 646; 250 NW2d 492

(1977). The reasoning in *Poma* compels this Court to conclude that the improper testimony concerning defendant McGee's assertion of his privilege against self-incrimination was inherently prejudicial to defendant Gallon's defense and requires reversal of Gallon's conviction. Defendants Gallon and McGee were apprehended together shortly after the robbery and were found in possession of the fruits and instrumentalities of the crime. Defendant McGee took the stand and denied involvement in the crime, claiming that he and Gallon had picked up the clothes, weapons and stolen merchandise after observing someone throw two bags containing the items out of an automobile. Defendant Gallon did not testify. There is no question that the prosecution's case against defendant Gallon was intertwined with the case against defendant McGee and that it was highly unlikely, on the facts of this case, that one defendant could be acquitted while the other could be convicted. It is also clear that any inculpatory conduct or statement by defendant McGee also inculpated defendant Gallon. Accordingly, an adverse inference drawn from defendant McGee's refusal to answer the detective's questions would also be prejudicial to Gallon's defense. Under these circumstances, we find that the testimony concerning defendant McGee's assertion of his right to remain silent was inherently prejudicial to defendant Gallon's case and requires reversal of Gallon's conviction.

Our disposition of these issues makes it unnecessary to resolve the other issues raised in this appeal.

Reversed and remanded for a new trial.