## PEOPLE *v*. KIRK.

1. CRIMINAL LAW—ASSAULT— EVIDENCE—REPUTATION OF PERSON ASSAULTED—ADMISSIBILITY.

   In a prosecution for assault with intent to do great bodily harm, the quarrelsome disposition of the person assaulted and his reputation as such, not known to the respondent, are immaterial.

2. SAME—APPEAL—REVIEW—EXCEPTIONS—NECESSITY.

   Alleged error in the exclusion of testimony to which no exception was taken will not be reviewed.

3. SAME — INSTRUCTIONS — INTOXICATION — SUPPORT FROM TESTIMONY.

   On a prosecution for assault with intent to do great bodily harm, evidence examined, and *held*, to furnish no support for a requested instruction absolving respondent from liability if he was so intoxicated at the time as to be unable to form a specific intent.

4. SAME—APPEAL—REVIEW—FINDINGS—CONCLUSIVENESS.

   The recollection of the trial judge and his findings on a motion for new trial on the ground of improper remarks by the prosecuting attorney, will be accepted as to the facts set up in affidavits in support of the motion, the context of the alleged remarks not being set forth.

5. SAME—ARGUMENT OF PROSECUTING ATTORNEY.

   For the prosecuting attorney to state that it is a fair inference from the evidence that the people's witnesses are telling the truth, and that he believes from the evidence that unless a verdict of guilty is rendered the people will not have had their just dues, though not approved, is not reversible error.

Error to Lenawee; Chester, J.   Submitted January 23, 1908.  (Docket No. 168.)   Decided February 15, 1908.

Wesley Kirk was convicted of an assault with intent to do great bodily harm less than the crime of murder, and sentenced to imprisonment for not less than 2 nor more than 10 years in the State prison at Jackson.   Affirmed.

*James H. Baker*, for appellant.

*Burton L. Hart*, Prosecuting Attorney, for the people.

OSTRANDER, J. Respondent Wesley Kirk was con-
victed of assault with intent to do great bodily harm less
than the crime of murder, and, after a motion for a new
trial had been overruled, sentenced to the State prison at
Jackson for a term of years. The errors assigned present
the questions:

(1) Was testimony tending to show the quarrelsome
disposition of the complaining witness (the injured man)
improperly excluded?

(2) Was testimony tending to show the motive of de-
fendant in leaving the State, after the assault was com-
mitted, improperly excluded?

(3) Was it error to refuse an instruction to the jury
upon the subject of respondent's intoxication at the time
the assault was committed?

(4) Were certain remarks of the prosecuting attorney
prejudicial?

It appears that respondents Wesley and John Kirk were
together informed against, that John had been tried, and
that upon the trial of his brother Wesley he was a witness
for the defense. Both fled the country and were taken in
the State of Kansas, coming back, however, without a
requisition. The complaining witness, John W. Sheperd,
and the Kirk brothers were in a billiard room just off of a
bar room in the city of Adrian on April 28, 1906, when
an altercation took place between Sheperd and John Kirk,
in the course of which Wesley Kirk struck Sheperd on
the head with a billiard cue, fracturing his skull. Wes-
ley was not sworn as a witness. John gave testimony
tending to prove that he understood and believed Sheperd
to be a quarrelsome man. On cross-examination of Shep-
erd, he was questioned at some length concerning alleged
altercations participated in by himself. Counsel for re-
spondent stated to the court that he had several witnesses
by whom he desired to prove the quarrelsome disposition
of Sheperd. The offer was excluded. We have read the

record with care to learn if it anywhere appears, or was claimed, that the disposition of Sheperd, good or bad, was known to respondent, and have discovered nothing tending to prove that he had any acquaintance with Sheperd, or that he had ever heard his reputation for peaceable conduct or otherwise called in question. We do not, therefore, see how the reputation of the man he struck, or his disposition, except as manifested in his presence, could have in any manner influenced his conduct. See, upon this subject, *People* v. *Farrell*, 137 Mich. 127.

For the prosecution, a deputy sheriff testified to the flight of respondent, the place where the arrest was made, the statement of respondent concerning the various places he had visited. The witness John Kirk was asked by counsel for respondent:

"*Q.* Well, now, I ask you, Mr. Kirk, what was your motive, and, if you know, what was Wes' motive, for leaving on that Sunday afternoon as you did?"

To this the objection was made that he could not know the motive of his brother except and only as his brother told him. The objection was sustained and no exception to the ruling was taken. On cross-examination, John Kirk testified that he went away because his brother did, and that he supposed his brother (respondent) was afraid of being arrested.

Counsel for respondent requested an instruction to the jury as follows:

"There was testimony on the part of the people tending to show that respondent was in an intoxicated condition from the use of liquors at the time the alleged assault was committed. If you find from the evidence here presented that respondent was so far under the influence of intoxicating liquors at the time of the alleged assault as to be unable to form a specific intent, then you must acquit the defendant of the charge," etc.

This was not given and no reference was made, in the charge, to the subject of respondent's intoxication. No testimony was offered on the part of respondent tend-

ing to prove that he was not sober. John Kirk testified that at his invitation respondent took one drink. There is other testimony to the effect that respondent had taken one drink of whiskey and that John Kirk had drunk more than once. The complaining witness on his direct examination testified:

"Well, I don't say that they were unconsciously drunk, or anything that way, but I say they was under the influence of intoxicating drinks; their appearance and actions showed that way some."

And on cross-examination he testified:

"Well, my judgment was they had been drinking intoxicating drinks and they felt pretty gamey, or they looked as if they did.   *   *   *

"Well, they felt the booze they had; they had got about nerve enough to do—  *   *   *   They didn't stagger.  *   *   *   I said they looked as though they had been drinking intoxicating liquors.

"Q. Well, would you say that they were drunk?

"A. No."

It will be noticed that the references in this testimony are to the brothers, and not specifically to respondent. The testimony having been concluded, the court said: "Is there any defense here of intoxication?" to which counsel for respondent said, "Well, we ask a ruling upon that, from the people's witnesses." In denying a new trial, the court said:

"I did not feel at that time, and I do not now feel, that the evidence here, the contention made from the evidence by the defense, raised the question of intoxication, and that's the reason why that request was left out."

It was one of the theories of the defense (I quote from the brief)—

"That the defendant struck the complaining witness over the head with a cue at a time when he had grave apprehensions that Sheperd, who was known to him and his brother to be not only of a quarrelsome nature but one who would resort to the use of deadly weapons, was in the act of doing his brother great bodily harm, if not

to take his life, and struck Sheperd not with malice or with intent other than to save his brother from what appeared to him as imminent danger; basing his action upon his knowledge of the fighting propensities of Sheperd and what to him seemed immediate and imminent danger fraught with disastrous results to his brother."

In stating to the jury the claim of the defense, the court said:

"I think the defense admits here in his testimony that he did strike the blow; but it is the claim of the defense that he had no intent to do great bodily harm less than the crime of murder, and, as I understand, it is also the claim of the defense here that this defendant, Wesley Kirk, was justified in what he did there, that the circumstances were such that he felt that he should come to the rescue of his brother and defend him. It is the claim of the defense here that Mr. Sheperd had taken from the rack where they kept the pool balls, a pool ball or a billiard ball, and that he had raised his hand in the act of throwing that ball at John Kirk. The defense claims at that time he made some remark or some threat as to what he would do, and it is the claim of the defense here that Wesley Kirk, this defendant, struck the blow in the defense of his brother.

"Now, in a brief way, I understand these to be the claims of the defendant. Is there anything else?"

No amendment was suggested by counsel. Attention is directed to the theory of the defense, outlined by counsel and by the court, not because respondent in a criminal case may not be entitled to go to the jury upon inconsistent theories, if there is testimony to support them, but for the purpose of stating the ground for an assumption, which is also otherwise supported by the record, that counsel for respondent did not in fact claim that his client was unable, by reason of intoxication, to form the specific intent with which he was charged. The testimony for the defense tends to prove that John Kirk called Sheperd to one side for the purpose of inquiring, and that he did inquire, why Sheperd had written a certain letter in which John Kirk was mentioned. That an altercation

between John and Sheperd resulted, Sheperd grasping a billiard or pool ball in his hand in a threatening manner and, retreating from John, apparently with his back to respondent, towards respondent. Respondent who had engaged to play a game of pool was at some distance with a billiard cue in his hands. He struck Sheperd with the cue. Why he did it was matter of inference from such testimony as the jury should believe. It was, apparently, a murderous blow, and the record contains testimony supporting an inference that there was concert of action between the Kirk brothers. It is conceded that the rule of *Roberts* v. *People*, 19 Mich. 401, is the law of this State and the jury should have been instructed in accordance therewith if there was testimony which would warrant a jury in saying that the intoxication of respondent was of a degree which rendered him incapable of entertaining the intent charged. We have reached the conclusion that it should be said, as matter of law, there was no such testimony.

In his argument to the jury, the prosecuting attorney said, "These witnesses, who I believe are telling you this transaction just as it occurred on the day in question " and was interrupted by an objection. He continued:

" Inferring from the evidence, and I have a right to take the evidence and judge from it, and I say from the evidence it is a fair inference that these people who come in and testified for the people were telling you just as that injury occurred up there; * * * and I say to you, gentlemen of the jury, that unless that verdict is found here today, I do not believe that the people of the State of Michigan will have had their just dues in this matter, according to the testimony as I see it."

Exception was here taken and the court remarked:

"I think, Mr. Prosecutor, that you have to be pretty careful about your argument as to what you believe as prosecutor. * * * That should be omitted. * * * And the jurors should take nothing against the defendant from what expression the prosecutor may make as his belief."

There are in the bill of exceptions, also, certain affidavits, in one of which counsel for respondent avers that during the argument of the prosecuting attorney, and while deponent was in the judge's private room, and while the trial judge was employed in reading from a law book, the prosecuting attorney said to the jury, "I believe this defendant is guilty of the greater offense, that is, the offense of assault with intent to do great bodily harm less than the crime of murder."

Deponent says he hurried into the court-room, that the prosecuting attorney had then passed in his argument from the subject, and that no exception was taken to the remark. The prosecuting attorney deposes, in answer, that he remembers of making no statements as to his belief in the matter excepting the ones to which exceptions were taken. In denying the motion for a new trial, the court, in considering this matter as then presented, said:

"I must state that it is my recollection that at no time did he [the prosecuting attorney] express an opinion of his own, or a belief, excepting as he coupled that entirely with the statement that the evidence persuaded him to that belief; and I do not believe that where there is any evidence upon which a prosecuting attorney may base his argument that the Supreme Court would reverse it simply because he draws a conclusion that such and such things were true, and in so reaching a conclusion, expressing it as his belief."

There is no occasion to review previous decisions of this court upon the question presented. They are somewhat numerous and the rule is, or should be, well understood. *People* v. *Quick*, 58 Mich. 321; *People* v. *McGuire*, 89 Mich. 64, in which the cases are collected; *People* v. *Ecarius*, 124 Mich. 616. We feel obliged to accept the finding and recollection of the circuit judge as to the fact in dispute, especially as the context of the alleged statement made by the prosecuting attorney is not given. Without approving the language employed by the prosecuting attorney, it is not such as, under our previous rul-

ings, requires a reversal of the case. The charge was favorable to respondent, especially so upon the theory that he was protecting his brother from threatened injury.

We find none of the errors assigned well founded, and the conviction and sentence are sustained.

GRANT, C. J., and BLAIR and MONTGOMERY JJ., concurred. CARPENTER, J., concurred in the result.