PEOPLE v. WALTERS.

1. HOMICIDE—EVIDENCE—CROSS-EXAMINATION—ORDER OF PROOF.

In a prosecution for murder, where defendant claimed he stabbed deceased in self-defense through fear, it was not reversible error for the trial court to defer cross-examination of the people's witnesses relative to the general reputation of deceased for quarrelsomeness and specific acts of his reputed violence until defendant's knowledge of such repute and acts was made to appear, although upon counsel's promise to later make the proper showing of defendant's knowledge, such testimony might have been admitted; the objection going only to the order of proof.

2. SAME — SELF-DEFENSE—GENERAL REPUTATION OF DECEASED AS A LAWLESS MAN INADMISSIBLE UNLESS KNOWN BY DEFENDANT.

There was no error in excluding what the neighborhood believed as to deceased's being a lawless man, and in limiting the issue to what defendant had heard and believed, since he could not be actuated to fear by what he did not know, even though the same was of such common repute that every one else knew it.

3. SAME — EVIDENCE—ADMISSIBILITY—KNOWLEDGE BY DEFENDANT OF DECEASED'S REPUTATION.

The reputation of the deceased for ferocity, brutality, and vindictiveness, so far as defendant had been informed thereof before the affray, was competent upon the question of whether such knowledge, together with knowledge of specific acts along the same lines, afforded defendant reasonable grounds for entertaining the belief that he was in imminent danger of death or great bodily harm in an assault at the hands of deceased and only to be averted by stabbing him.

4. SAME—TRIAL—NO IMPROPRIETY IN DRAPING DECEASED'S CLOTHING OVER BACK OF CHAIR.

There was no impropriety in the act of the prosecutor in draping over the back of a chair the clothing worn

On admissibility of evidence of turbulent and dangerous character of victim of assault or homicide on issue of self-defense, see note in L. R. A. 1916A, 1245.

Admissibility of evidence of specific instances to prove character and reputation of victim of crime is discussed in note in 14 L. R. A. (N. S) 708.

by the deceased, and, in his argument to the jury, in demonstrating the improbability of defendant's claim of his position and that of the deceased when he stabbed, and also the force necessary to drive the knife through the clothing.

5. SAME.

Striking the clothing, which consisted of a mackinaw jacket, sheepskin vest, and underwear, with the fatal knife, during the argument, to show the force necessary to penetrate it was not error resulting in a miscarriage of justice, since it would be apparent to the jury that clothing draped on a chair would not be as readily penetrated by the knife as when upon a human body.

6. SAME—CROSS-EXAMINATION—WITNESSES.

Under the record, *held*, not error for the trial court to permit the prosecuting attorney to cross-examine one of his own witnesses.

7. SAME.

Where a witness, on cross-examination by the prosecuting attorney, had denied saying in a store in the presence of several persons that he heard defendant come in and ask for deceased and say that he was going to kill him, and that then he knew something was going to happen, it was not error for the trial court to exclude the question, asked witness by defendant's counsel, "Isn't it a fact that kind of talk has been circulated around and spread around up there by deceased's friends?"

8. SAME — TRIAL — SELF-DEFENSE — INSTRUCTIONS AS TO SELF-DEFENSE NOT ERROR.

An instruction that "a killing is not justifiable on the ground of self-defense if the defendant, after a difficulty between the deceased and himself had terminated, or after he had had an opportunity to decline combat, continued the struggle or renewed the affray, the result of which was the homicide; and that is the rule irrespective of who was at fault in the original encounter; the defendant fails to make out a case of self-defense where the evidence shows he renewed a difficulty after the deceased abandoned it," *held*, justified by the record.

Exceptions before judgment from Newaygo; Barton (Joseph), J. Submitted June 15, 1923. (Docket No. 119.) Decided July 19, 1923.

Leo R. Walters was convicted of manslaughter. Affirmed.

*John M. Dunham,* for appellant.

*William J. Branstrom,* Prosecuting Attorney, for the people.

WIEST, C. J.     Under an information charging him with the crime of murder defendant was convicted of manslaughter.     The case is here on exceptions before sentence.     Defendant stabbed Peter Christiansen in the body seven times with a large jackknife, one stab killing him.     The stabbing took place in Christiansen's dooryard.     Defendant claimed at the trial that he went to Christiansen's home to warn Mrs. Christiansen that her husband had been drinking and upon leaving encountered Christiansen who seized him, threw him down and choked him and, being fearful of death, he took the jackknife from his pocket, opened the blade and stabbed his assailant to make him let go his hold.     Defendant had accompanied Christiansen, earlier in the day, out in the country on an automobile trip and both had been drinking, and upon return to Bitely where they lived they had some trouble in the livery barn, and clinched, but defendant broke the hold, seized a club and chased Christiansen away.     From this encounter defendant went to Christiansen's home, as he claims, for the purpose stated, but this is disputed by Mrs. Christiansen who testified that defendant asked, "Where is Pete?" and upon her saying "I don't know," he stated "I want Pete," and "I will fix him tonight."     In this she was supported by two other witnesses, who also testified defendant threatened to kill the deceased.

Defendant was brought up by the mother of the deceased and at the time of the killing lived at the home of a sister of the deceased.     At the trial de-

fendant claimed he stabbed in self-defense. The trial judge cut off a wide range of cross-examination of witnesses for the people relative to the general reputation of the deceased for quarrelsomeness and specific acts of his reputed violence, holding that only such repute and acts coming to the knowledge of defendant were admissible, and deferred examination as to such matters until defendant's knowledge was made to appear. There was no error in this. In the order of proof such testimony would have to follow, not precede, testimony supporting defendant's claim of self-defense. It is true the circuit judge might have permitted the testimony upon counsel's promise to later make the proper showing of defendant's knowledge, but the question here raised only goes to the order of proof and cannot be urged as reversible error. Defendant's fear of imminent death at the hands of the deceased, arising from apprehension because of his bad character, could not have come from what he had not heard. But it may be said the ruling drove defendant to take the stand. His sole defense compelled him to give his testimony. The defendant was given full opportunity to show, and did show, the character of the deceased, as understood by him, and there was no error in requiring the reason for such a showing to come before instead of after testimony relating thereto was admitted. It is contended there was error in not permitting the sister of the deceased to testify that the neighborhood believed Christiansen had set fire to a store some years before and he was a lawless man. Defendant claims he heard this rumor. There was no error in excluding what the neighborhood believed and in limiting the issue to what defendant had heard and believed. *People* v. *Farrell*, 137 Mich. 127. Counsel state:

"We believed we had a right to show by reputable witnesses living in that community that this man's reputation was bad and that everybody knew it. *First,* it tended to corroborate the testimony of respondent as to that reputation. *Second,* it would be competent as bearing upon the fear created in the mind of respondent when assaulted by decedent and when he claims he was placed in fear because of the reputation he knew decedent possessed."

The reputation of the deceased for ferocity, brutality and vindictiveness, so far as defendant had been informed thereof before the affray, was competent upon the question of whether such knowledge, together with knowledge of specific acts along the same lines, afforded defendant reasonable grounds for entertaining the belief that he was in imminent danger of death or great bodily harm in an assault at the hands of the deceased and only to be averted by stabbing him. *People* v. *Farrell, supra.* This was permitted. Defendant could not, however, strengthen his claim of fear of impending death at the hands of the deceased by showing at the trial that everybody knew the bad character of the deceased. Defendant, if moved to stab by fear, was actuated by what he knew and had heard about the deceased and not by something he did not know and had not heard, even though the same was of such common repute that everyone else knew it. The court was clearly right in refusing the admission of the testimony for the purpose claimed.

Complaint is made of the act of the prosecuting attorney in causing the clothing worn by the deceased to be brought into the court room, draped over the back of a chair and in demonstrating, in his argument to the jury, by striking the clothing with the fatal knife, the improbability of defendant's claim of his position and that of the deceased when he stabbed and also the force necessary to drive the knife through

the clothing.    The clothing had been identified. and introduced in evidence.    The act of the prosecutor was not in the nature of an experiment requiring testimony by a witness.    Introduction of the clothing in evidence placed the same before the jury for inspection and, as inspection to be of aid necessarily included perception by any of the senses, the demonstration by the prosecutor was addressed to the sense of perception of the jurors and was argument illustrated by articles in evidence of the view the jury should take of the claim of self-defense.    There was no impropriety in draping the clothing over the back of a chair.    In *People* v. *Durrant,* 116 Cal. 179 (48 Pac. 75), the clothing of a slain woman was draped upon a dressmaker's form and error was predicated upon the use of the form and the refusal of the court to order the garments removed from it.    Upon this point the court stated:

"The frame afforded a convenient mode for displaying the wearing apparel, concerning which much testimony was taken.    We can discern no more impropriety or irregularity in the plan pursued than would have existed if the garments had been hung upon a clothesline or huddled into a corner."

The clothing on the chair consisted of a mackinaw jacket, sheepskin vest and of underwear.    In the course of his argument the prosecuting attorney said:

"Now, gentlemen of the jury, there is the heavy sheepskin vest.    Now, this man says he wasn't angry, but was frightened.    He must have been angry to drive a hole through there."

At this point the prosecutor struck the clothing with the knife.    Of course, the clothes being draped over the back of the chair would not be as readily penetrated by the knife as when upon a human body, but this would be as apparent to the jury as to any one else possessed of common sense and would but weaken

the convincing force of the demonstration. We cannot say the striking of the clothing with the knife was error resulting in a miscarriage of justice.

It is alleged the court was in error in permitting the prosecuting attorney to cross-examine one of his own witnesses. We have examined the record and think the trial judge was right. Among questions asked under such permitted cross-examination was:

"Do you remember saying in that store one night in the presence of several parties: 'I heard Leo come in and asked for Pete and say he was going to kill Pete and then I knew something was going to happen?'

"A. No, sir; I didn't say it."

Counsel says, in view of the cross-examination and following the question just mentioned, he was entitled to ask the following question:

"Isn't it a fact that kind of talk has been circulated around and spread around up there by Pete's friends?"

The trial judge sustained an objection to this question. The trial judge was clearly right in his ruling. Error is predicated upon the following instruction:

"A killing is not justifiable on the ground of self-defense if the defendant, after a difficulty between the deceased and himself had terminated, or after he had an opportunity to decline combat, continued the struggle or renewed the affray, the result of which was the homicide; and that is the rule irrespective of who was at fault in the original encounter. The defendant fails to make out a case of self-defense where the evidence shows he renewed a difficulty after the deceased abandoned it."

It is claimed the instruction was outside the evidence. The testimony supported the instruction. Three witnesses testified that following the affray at the livery barn when defendant chased the deceased away with a club, the defendant went to the home of the deceased and there threatened to kill him, met him

in the yard and two of the witnesses saw the parties grapple and the deceased have defendant on the ground, pulled them apart, endeavored to quiet them and supposed they had, but on letting go of them they rushed at each other again and before the witnesses could pull them apart defendant had stabbed the deceased.　If the jury accepted this testimony the killing could not be justified as in self-defense.

The record discloses no reversible error, the conviction is affirmed and the circuit court advised to proceed to judgment.

FELLOWS, McDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.