PEOPLE v ANDERSON

Docket No. 79232. Submitted May 8, 1985, at Grand Rapids.—Decided
    November 26, 1985.

Defendant, Derell F. Anderson, was convicted by a jury in Kent
    Circuit Court of first-degree felony murder, assault with intent
    to commit murder, assault with intent to rob while armed and
    felony-firearm. The trial court, R. Stuart Hoffius, J., sentenced
    him to concurrent terms of life imprisonment, from 20 to 40
    years, from 15 to 30 years, and the mandatory two-year term
    for felony-firearm. Defendant appealed. *Held:*

The trial court erred by refusing to admit evidence of the
    murder victim's violent, turbulent and agressive character.
    However, the error was harmless beyond a reasonable doubt
    and does not require reversal.

Affirmed.

W. R. PETERSON, J., concurred separately. While he agreed
    that any error in excluding evidence of the murder victim's
    violent character was harmless beyond a reasonable doubt, he
    would hold that there is no support either in the common law
    or under the Michigan Rules of Evidence for the proposition
    that such evidence is admissible in the absence of a defendant's
    claim of self-defense.

OPINION OF THE COURT

1. HOMICIDE — FIRST-DEGREE MURDER — FELONY MURDER — INTENT
    — MALICE — INFERENCE.

A jury may properly infer intent to kill from evidence that the
    defendant intentionally set in motion a force likely to cause
    death or great bodily harm; whenever a killing occurs in the
    perpetration or attempted perpetration of an inherently dan-

REFERENCES

Am Jur 2d, Homicide §§ 50, 51, 308, 309.

Modern status of the rules requiring malice "aforethought," "delib-
eration," or "premeditation" as elements of murder in the first
degree. 18 ALR4th 961.

Admissibility of evidence as to others' character or reputation for
turbulence on question of self-defense by one charged with as-
sault or homicide. 1 ALR3d 571.

gerous felony, the jury may consider the nature of the underlying felony and the circumstances surrounding its commission in order to infer malice (MCL 750.316; MSA 28.548).

2. Homicide — Felony Murder — Malice.

The issue of malice must be submitted to the jury in order to convict a defendant of a first-degree murder which occurred in the perpetration or attempted perpetration of a felony (MCL 750.316; MSA 28.548).

3. Homicide — Deceased's Character — Evidence — Admissibility.

Evidence of any "pertinent trait" of a homicide victim is admissible; if a victim's nature sheds light on whether the killing was intentional or accidental, it is pertinent and evidence thereof is admissible (MRE 404[a][2]).

4. Homicide — Deceased's Character — Evidence — Admissibility.

Evidence of a homicide victim's character may be admissible even if the accused does not interpose a plea of self-defense (MRE 404[a][2]).

Concurrence by W. R. Peterson, J.

5. Homicide — Deceased's Character — Evidence — Admissibility.

*Evidence of the violent character of a homicide victim may be admissible, in some cases, to support a claim of self-defense by the accused absent independent evidence supporting the claim (MRE 404[a][2]).*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *David H. Sawyer,* Prosecuting Attorney, and *Dennis B. Leiber,* Assistant Prosecuting Attorney, for the people.

*George S. Buth,* for defendant on Appeal.

Before: Shepherd, P.J., and R. M. Maher and W. R. Peterson,* JJ.

Per Curiam. A jury convicted defendant of first-degree felony murder, MCL 750.316; MSA 28.548, assault with intent to commit murder, MCL 750.83; MSA 28.278, assault with intent to rob

---

* Circuit judge, sitting on the Court of Appeals by assignment.

while armed, MCL 750.89; MSA 28.284, and felony-firearm, MCL 750.227b; MSA 28.424(2), as charged. The trial court sentenced him to concurrent terms of life imprisonment, from 20 to 40 years, and from 15 to 30 years, in addition to the mandatory, consecutive two-year term for felony-firearm. Defendant appeals as of right, claiming that the trial court erred by refusing to admit evidence of the decedent's violent, turbulent and aggressive character. We agree with defendant's assertion that the trial court so erred, but conclude that the error was harmless beyond a reasonable doubt under the circumstances of this case. Therefore, we affirm.

The decedent and a witness were standing behind the counter in a Grand Rapids party store on the evening of November 7, 1983. Defendant entered the store and bought a pack of cigarettes. He then pointed a handgun at the witness's chest and demanded the contents of the cash register. The weapon was "cocked and all ready to go". Defendant turned toward the decedent and said, "What do you think this is, some kind of joke?" The decedent and defendant engaged in a scuffle. The witness heard defendant bump into a potato chip rack. "A couple seconds" later, the witness heard a gunshot. While running to the front door, he heard another shot, this one louder than the first.

There were three persons in the back room of the store. One of these witnesses heard two shots. He ran to the main portion of the store and saw defendant. Another of these witnesses was watching the decedent as he was shot. She recalled that the decedent was bending over, as if to obtain a gun under the counter, when he was shot. She saw no fight or scuffle.

A forensic pathologist testified that the fatal bullet entered the decedent's body at an upward

angle. A detective, after finding no powder burns on the victim's jacket, concluded that the gun must have been four or more feet away when it was fired. An evidence technician found shell fragments on a shelf 46 inches above the floor. The technician surmised that the bullet had traveled in a southwesterly direction, that is, toward the front of the store.

Defendant admitted that he was the perpetrator, but claimed that the gun discharged accidentally because the decedent kicked his hand. Defendant did not remember firing the second shot.

Defendant offered testimony of the decedent's "violent, turbulent" character. The trial court found the evidence irrelevant because defendant did not claim self-defense.

Defendant argues that the victim's combative nature was "a pertinent trait of character" because it would, if proved, have made his version of the shooting more credible. MRE 404(a)(2). According to defendant, an aggressive individual would more likely have kicked his hand, causing the inadvertent discharge of the handgun. If the jury believed the shooting was accidental, defendant urges, they would not have convicted him of felony murder.

We think there is some merit in defendant's argument. An agressive individual would, arguably, be more likely than a submissive person to kick an armed robber. To the extent this is true, it lends support to the defense theory. Of course, the jury might have validly convicted defendant of felony murder even if they concluded that the gun went off accidentally. "A jury can properly *infer* malice from evidence that a defendant set in motion a force likely to cause death or great bodily harm." *People v Aaron,* 409 Mich 672, 729; 299 NW2d 304 (1980) (emphasis in original). The jury

could have concluded that, even though defendant did not specifically intend to kill, his actions prior to the shooting showed a wanton disregard "of the likelihood that the natural tendency of [his] behavior [was] to cause death or great bodily harm". *Aaron, supra,* p 730. When defendant pointed the gun ("cocked and all ready to go") at the victims, he took the risk that they might exercise their natural right of self-preservation.

Nevertheless, it was error to exclude the evidence of the decedent's allegedly violent character. That the jury might have convicted defendant of felony murder even if they thought the shooting itself was accidental does not, in itself, extinguish the possibility that the jurors would have found malice lacking if the evidence had been admitted. "[T]he issue of malice must always be submitted to the jury." *Aaron, supra,* p 733.

The people argue, and the trial court ruled, that evidence of the victim's character is inadmissible where the accused does not claim self-defense. We disagree. Under MRE 404(a)(2) evidence of any "pertinent trait" of the victim is admissible. If the victim's nature sheds light on whether the killing was intentional or accidental, it is surely pertinent. In this case, the people, in order to secure a conviction, had to prove that defendant acted with malice. *Aaron, supra.* A concluson that the shooting was accidental, though not necessarily inconsistent with a verdict of guilty of felony murder, would have made conviction of a lesser offense more likely.

In *People v Burks,* 387 Mich 393, 395; 196 NW2d 777 (1972), the Supreme Court stated that evidence of the deceased's character may be admissible even if the accused does not interpose a plea of self-defense. The Court quoted from 40 CJS, Homicide, § 222, pp 1138, 1140:

"Aside from the situation where there is a claim of self-defense and some evidence in support thereof * * * the violent, turbulent, and dangerous character of deceased may be shown when from the circumstances of the case it is a part of the res gestae, or it is relevant to illustrate the circumstances attending the homicide * * * or there is evidence of threats by deceased against accused, or when the evidence of the homicide is wholly circumstantial, or where the immediate circumstances of the killing render it doubtful whether the act was justifiable or not, or leave the question of the intention of accused in committing the crime doubtful or the proof evenly balanced, or indicate provocation on the part of the deceased."

The people contend that, regardless of his character, the decedent had every right to resist an armed attack. We agree that the victim had the right to defend himself. However, if in doing so he caused the gun to discharge, that fact is relevant to defendant's intent. We must bear in mind that the issue concerns only the degree of homicide, not whether defendant would go completely unpunished for the killing.

A thorough scrutiny of the record convinces us that the error was harmless beyond a reasonable doubt. *People v Robinson,* 386 Mich 551, 563; 194 NW2d 709 (1972). Several aspects of the matter indicate that, even if the testimony concerning the victim's nature had been allowed, not a single juror would have been convinced the shooting was an accident. *People v Gallon,* 121 Mich App 183, 189; 328 NW2d 615 (1982).

First, defendant displayed a murderous intent by his assault of the witness as the witness tried to flee by the front door. The jury found that defendant intended to murder the witness. The jury's finding of the intent required for assault with intent to murder indicates that the panel also would have found the malice required for a felony

murder conviction, despite any evidence of the murder victim's character. Defendant's unprovoked attempt to shoot the fleeing witness casts doubt on his testimony that the shooting was accidental.

Secondly, the same witness also testified that "a couple seconds" elapsed between the scuffle and the first shot, and that defendant had sprawled backward onto a potato chip rack during the scuffle. This testimony tended to disprove the defense theory, for if the shot rang out after the scuffle, then it was not caused by the alleged kick from the victim.

Furthermore, the witness in the back room, who observed the decedent at the moment of the shooting, saw no scuffle and stated that the victim was shot while reaching under the counter. According to this witness, the victim was bending over as if to obtain a gun. The victim was in no position to kick defendant's hand. Indeed, the witness saw no such kick. This testimony shows that the decedent succeeded in pushing or kicking defendant away for a moment, but his attempt to reach for a weapon was cut short by the shooting. This proof, also, is contrary to the defense theory.

Finally, evidence of the victim's character would have added little to defendant's chances. The jury was already aware that the victim engaged in a struggle with defendant just before the shooting. Therefore, additional testimony that he had character traits that would lead him to resist, although relevant, was somewhat redundant. The main question raised by defendant's testimony was not whether the decedent was the sort of man who would resist (the jury knew he was from the testimony of the other man behind the counter), but whether in resisting he caused the gun to discharge. As noted above, defendant's theory of

the shooting lacked evidentiary support beyond his own testimony, which was not believed by the jury.

Affirmed.

W. R. Peterson, J. *(concurring).* I concur in the result herein for, even if the dictum in *People v Burks,* 387 Mich 393; 196 NW2d 777 (1972), is to be taken at face value, any error in excluding the proffered evidence as to the alleged violent character of the deceased was harmless beyond a reasonable doubt.

I write separately, however, since I am convinced that the dictum of *Burks* ought not to be given face value, that it is not the dictum which it has been taken to be, and that MRE 404(a)(2) was not intended to dignify *Burks* with legitimacy nor to create an expanded concept of relevancy so as to permit consideration of evidence of the character of a victim of crime which has never been admissible in Michigan or elsewhere.

The traditional rule that evidence is admissible if it is "relevant",[1] *i.e.,* if it tends "to make the existence of any fact that is (material) more probable or less probable than it would be without the evidence",[2] would, without more, justify admission of the proffered evidence. My colleagues are eminently correct in observing that the deceased victim's alleged combative nature would be relevant to circumstantially corroborate defendant's testimony that his gun discharged accidently because the deceased kicked at it. A trait of character is relevant to the question of whether the person acted in conformity therewith on a given occasion.

[1] MRE 402.

[2] MRE 401.

However, such evidence, for that purpose,[3] historically has been categorized as speculative, divorced from probability, of tenous logic and as being only remotely relevant; in short, as being so lacking in probative quality that it has been universally held to be inadmissible.[4] Hence, MRE 404(a) commences with a reiteration of this principle:

"Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion."

But there are exceptions to this exception. While none are known in civil cases, two exceptions allowing character evidence to advance the proposition that the person acted consistently with a character trait came to be known in the criminal law. The first, allowing proof of the reputation of the accused for good character, is codified in MRE 404(a)(1). The second permitted the character of the victim to be put in evidence in two kinds of

[3] The offer of evidence of a trait of character for a different purpose, of course, is a different question, *e.g.*, reputation of violent character, and even specific acts of violence, may be admissible in support of a claim of self-defense in homicide and assault cases where known to the person asserting the defense, as bearing on his state of mind when confronted by the person of such character. *Hurd v People*, 25 Mich 405 (1872); *Brownell v People*, 38 Mich 732 (1878); *Galbraith v Fleming*, 60 Mich 403; 27 NW 581 (1886); *Culley v Walkeen*, 80 Mich 443; 45 NW 368 (1890); *People v Farrell*, 137 Mich 127; 100 NW 264 (1904); *People v Walters*, 223 Mich 676; 194 NW 538 (1923); *People v Dunn*, 233 Mich 185; 206 NW 568 (1925).

[4] See 1 Wigmore, Evidence (3d ed) § 55 *et seq.*

Apart from its lack of compelling logic, such evidence is disfavored because of its tendancy to create false issues, distraction, waste time, prejudice and surprise. See McCormick, Evidence (3d ed), §§ 186, 188; Falknor, Extrinsic Policies Affecting Admissibility, 10 Rutgers L Rev 574 (1956).

Moreover, such nebulous testimony is suspect because "it is often feasible to obtain untrustworthy character-testimony". 1 Wigmore, *ibid,* § 63, p 470.

cases, homicide prosecutions where the accused claimed self-defense,[5] and rape prosecutions where the accused claimed consent.[6] In homicide cases, the accused claiming self-defense was allowed to prove the reputation of the deceased victim for violence as circumstantial evidence that the deceased was the aggressor. In rape cases, the accused claiming consent was allowed to prove the reputation of the victim for unchastity as circumstantial evidence of consent. No evidence of specific acts of violence or concupiscent conduct was admissible but only reputation evidence, and then only after a foundation had been laid, generally by some evidence tending to support the claimed defense.[7]

Prior to the decision in *People v Burks,* both of these exceptions allowing proof of character of a victim,[8] but none other, had been recognized in

---

[5] 1 Wigmore, *ibid,* § 63.

[6] 1 Wigmore, *ibid,* § 62.

[7] See Wigmore, *ibid;* 64 ALR 1029; and 1 ALR3d 571.

[8] Initially, the proposition that the character of the victim might be proved was rejected in a series of homicide cases. *People v Garbutt,* 17 Mich 9 (1868); *People v Miller,* 49 Mich 23; 12 NW 895 (1882); *People v Farrell, supra; People v Kirk,* 151 Mich 253; 114 NW 1023 (1908); *People v Walters, supra.* The cases sometimes hint that evidence of the violent character of the deceased might be relevant if self-defense was in issue *(Garbutt* and *Miller)* and sometimes reject that suggestion *(Farrell* and *Kirk).*

It was not until *People v Stallworth,* 364 Mich 528; 111 NW2d 742 (1961), presaged by dictum in *People v Cellura,* 288 Mich 54; 284 NW 643 (1939), that the self-defense exception was allowed in Michigan. Neither decision was bottomed on Michigan precedent nor, indeed, did either acknowledge that Michigan precedent was to the contrary.

In *Cellura,* the defendant claimed that he killed in self-defense and sought to introduce evidence of the criminal record of the deceased. The Court affirmed the exclusion of the evidence with this language:

"Defendant argues that it was reversible error for the court to refuse to permit evidence of other specific acts of violence on the part of deceased as bearing upon his violent character. Proof of the violent and turbulent character of deceased is admissible in homicide cases where there is an issue of self-defense, as bearing upon whether the deceased was likely to be the aggressor in such an encounter. Proof of specific acts is not, however, admissible as evidence of violent charac-

Michigan. *Burks* thus contains dictum unfounded in Michigan precedent.

In *Burks,* the accused in a homicide trial, in which there was no evidence of self-defense, sought to introduce the police record of the deceased. The trial court excluded the record on the ground that there was no foundation laid for character evidence,[9] and the Court of Appeals affirmed, 30 Mich App 102; 186 NW2d 18 (1971). In doing so, however, it used language seeming to suggest that the foundation for character evidence is the *plea* of self-defense, saying at page 104:

"[T]he character of the deceased in a homicide prose-

ter in such a case. Evidence of the character of deceased must be confined to his general reputation, and evidence of particular acts of violence or lawlessness is not admissible unless they were directly connected with and involved in the homicide," *Cellura, supra,* p 64.

*Stallworth* allowed a wife claiming self-defense in the homicide of her husband to offer testimony of character witnesses as to the reputation of her dear-departed spouse for "quarrelsomeness, ferocity, brutality and vindictiveness while * * * intoxicated". It might be argued that this was only a reaffirmation of the principle, noted in fn. 3, *infra,* that such evidence, *known to the accused,* is admissible as bearing on the state of mind of the accused, for it cites such Michigan precedents and 2 Wigmore, *ibid,* § 246 to that effect and says (p 536), "It is obvious, of course, that defendant as the wife of deceased knew her husband's reputation as to violence." *Stallworth* also, however, without distinguishing the two uses of character evidence, cites its dictum in *Cellura* and 1 Jones, Evidence (5th ed), § 172 that such evidence is admissible as circumstantial proof that the reputedly violent homicide victim was the aggressor. It has since been accepted for that proposition.

The rape-victim exception has been recognized in Michigan since *People v Ryno,* 148 Mich 137; 111 NW 740 (1907), where the Court fulfilled earlier dicta contained in *People v McLean,* 71 Mich 309; 38 NW 917 (1888), and *People v Abbott,* 97 Mich 484; 56 NW 862(1893). Curiously, this exception is seldom described as proof of a fact (consent) by circumstantial evidence of reputation (unchaste character) but rather as impeachment; that it is not impeachment may be seen from *McLean, Abbott,* and later cases which barred evidence of the consenting reputation of girls below the age of consent.

[9] Even had there been a foundation for character evidence, specific acts of violent nature unknown to defendant, as reflected in the police record, would not have been admissible. *People v Dowd,* 127 Mich 140; 86 NW 546 (1901); *People v Cellura, supra; People v Johnson,* 382 Mich 632; 172 NW2d 369 (1969).

cution is material only when a plea of self-defense is interposed. (Citations omitted.) No plea of self-defense having been entered by defendant, there was consequently no proper foundation for admitting evidence as to the character of the deceased."

The Supreme Court affirmed, agreeing that there was no foundation for evidence of the character of the deceased, pointing out that it was not material to the circumstances shown by the evidence. The Court, unfortunately, used the following language:

"I disagree with the rigid statement by the Court of Appeals that 'the character of the deceased in a homicide prosecution is material *only* when a plea of self-defense is interposed.' (Emphasis added.)

"A proper statement of the evidentiary rule appears in 40 CJS, Homicide, § 222, pp 1138, 1140:

" 'Aside from the situation where there is a claim of self-defense and some evidence in support thereof * * * the violent, turbulent, and dangerous character of deceased may be shown when from the circumstances of the case it is a part of the res gestae, or it is relevant to illustrate the circumstances attending the homicide * * * or there is evidence of threats by deceased against accused, or when the evidence of the homicide is wholly circumstantial, or where the immediate circumstances of the killing render it doubtful whether the act was justifiable or not, or leave the question of the intention of accused in committing the crime doubtful or the proof evenly balanced, or indicate provocation on the part of deceased.' " 387 Mich 393, 395.[10]

This statement by the Court is taken by my colleagues as dictum in support of the proposition

[10] The *Burks* opinion deletes from its CJS quotation the words "as discussed *infra* § 272." Section 272 in turn deals with proof of character of the deceased in homicide cases where self-defense is in issue.

that the admissibility of evidence of the violent character of a homicide victim is not limited to cases in which self-defense is in issue. They are not alone in that conclusion. See committee comment on MRE 404(a)(2); Wade & Strom, *Michigan Courtroom Evidence,* (ICLE, 1985), p 102.

There is another view that may be taken of the Court's purpose in *Burks,* and that is that the Court was concerned with the Court of Appeals language suggesting that the plea of self-defense alone makes evidence of the violent character of the deceased admissible. The purpose of the Court, in that view, was merely to emphasize the necessity of a foundation, citing 40 CJS, Homicide, § 222 for that purpose.

What then of 40 CJS, Homicide, § 222? Is that encyclopedic text intended to suggest that the character of the deceased in a homicide case can be raised other than when self-defense is claimed? Nothing in another encyclopedia, 40 Am Jur 2d, Homicide, suggests that such is the law anywhere, and a careful reading of the CJS text shows that that is not its meaning.

Rather, the CJS text assumes a claim of self-defense and speaks to the foundation necessary to justify admission of character evidence in such a case. The CJS text should have been written as follows:

"Given a claim of self-defense, aside from cases where there is some evidence in support thereof, as discussed infra, § 272, the violent, turbulent and dangerous character of the deceased may be shown when," etc.

A reading of the cases cited in support of the exceptions then enumerated in the text discloses

that each, save one,[11] involves a claim of self-defense. The various exceptions enumerated are not of questions other than self-defense in homicide cases, but are self-defense cases in which a foundation for the offer of evidence of the deceased's violent character is said to exist without evidence in support of the claim.[12]

Thus, recognizing that the CJS text deals with self-defense cases, the dictum of *Burks* is not that evidence of the violent character of the deceased is admissible in homicide cases other than those involving claims of self-defense, but that there is somehow a variety of situations in which such evidence is admissible to support a claim of self-defense absent independent evidence supporting the claim. In short, whatever its validity, it is inapplicable herein for this is not a case involving self-defense.

Nor was it the intent of the Michigan Rules of

[11] The sole case cited under § 222 which does not involve a claim of self-defense does not involve proof of the character of the deceased homicide victim, but rather proof of specific events involving the deceased offered as circumstantial corroboration of the defendant's bizarre story. *People v Matlock,* 51 Cal2d 682; 336 P2d 505; 71 ALR2d 605 (1959).

[12] Not only are the cases cited ones involving claims of self-defense but the so-called exceptions allowing such evidence without foundation are only varying statements of reasons why such evidence should be admissible, and many are dictum, *e.g. Shinall v State,* 199 So 2d 251 (Miss, 1967), suggests various reasons for allowing such evidence if the issue of self-defense "is in doubt", but goes on to site 2 Wigmore, Evidence, § 246 that an overt threatening act of the deceased is the foundation for such evidence; *Eiland v State,* 52 Ala 322 (1875), similarly says that such evidence is admissible if part of the res gestae, *viz.,* to explain threats or conduct of the deceased at the time of the killing, and so too *Morgan v State,* 20 Ala App 331; 102 So 236 (1924), and *State v Dumphey,* 4 Minn 438 (1860); *State v Byrd,* 121 NC 684; 28 SE 353 (1897), suggest in dictum that such evidence is admissible if there is other evidence tending to show self-defense, *or* as tending to show self-defense when the evidence of the killing is circumstantial, while *State v Turpin,* 77 NC 473; 24 Am Rep 455 (1877), says that such evidence is admissible if there is evidence tending to show that the killing was in self-defense *and* the evidence of the killing is circumstantial.

Evidence to blaze a new trail of admissibility of character evidence. The Supreme Court order creating a committee to draft rules of evidence was prompted by the adoption of the Federal Rules of Evidence.[13] The work of the committee, as noted in its introduction to the proposed rules, drew its format from FRE.

Each FRE section was reviewed in light of Michigan practice: did the FRE provision conform to Michigan practice and, if not, would it be preferable to adhere to Michigan precedent or to follow the FRE? And, obviously, the starting point being with the FRE, the first question was always: what does the language of the particular section of the FRE contemplate?

MRE 404(a) duplicates FRE 404(a) in its general exclusion of circumstantial character evidence, and MRE 404(a)(1) duplicates FRE 404(a)(1) in excepting the criminal defendant's offer of evidence of his own good character.

FRE 404(a)(2) then provided the second exception:

"Evidence of a pertinent trait of character of the victim of the crime offered by an accused or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first agressor."

It seems clear that the sole purpose of FRE 404(a)(2) was to incorporate the limited exception, noted above, to allow circumstantial character evidence as to self-defense in homicide cases and consent in rape cases, albeit grudgingly. The commentary of the Federal Advisory Committee notes that such evidence was allowed in most jurisdic-

---

[13] Public Law 93-595, 93rd Congress, H.R. 5463, January 2, 1975.

tions and was "deeply embedded in our jurisprudence" though founded "more in history and experience than in logic". There is nothing whatsoever to indicate that FRE 404(a)(2) was intended to do more than to retain those evidentiary relics. There is no discernible purpose to allow circumstantial character evidence of the victims of crime or rape for purposes other than to prove self-defense or consent; nor is there a purpose to allow circumstantial character evidence of the victims of other kinds of crime.

The Michigan Committee deviated from FRE 404(a)(2) as to the rape victim. MRE 404(a)(2) and (3) recognized that an unchaste reputation is not reliable evidence of consent in a rape case. While one would have hoped that this deviation from FRE 404(a)(2) had followed from Michgian case law, MRE 404(a)(3) reflects neither enlightened adjudication nor a courageous committee but rather legislative intervention. 1974 PA 266; MCL 750.520j; MSA 28.788(10).[14]

Having deleted one of two situations wherein FRE 404(a)(2) contemplated use of circumstantial character evidence, the Michigan committee contemplated no enlargement of the use of such evidence. The committee commentary to MRE 404(a)(2) noted the apparent *Burks* dictum and that there was no prior Michigan authority suggesting that circumstantial evidence of the character of a victim might be offered other than in homicide cases. Nothing in the minutes of the committee suggests that there was a purpose to endorse the supposed dictum of *Burks* or to give MRE 404(a)(2) a broader scope than was intended by FRE 404(1)(2). *Burks's* meaning, and its effect

[14] A move subsequently followed by the Federal Rules by adoption of FRE 412 in 1978.

on the scope of MRE 404(a)(2), thus, was left to future adjudication.

In its order of January 5, 1978, adopting the Michigan Rules of Evidence, the Supreme Court said:

"In adopting these rules, the Court should not be understood as foreclosing consideration of a challenge to the wisdom, validity or meaning of a rule when a question is brought to the Court judicially. * * * While these rules are binding on Michigan courts, the Court does not intend to preclude evidentiary objection in the trial court based on a challenge to the wisdom, validity or meaning of a rule and development of a separate record so as to properly present the challenge for review of this Court."

The trial judge herein considered the meaning of MRE 404(a)(2) and the value of *Burks* as precedent and excluded the testimony. He was, in my judgment, correct.