# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 9, 2015

Plaintiff-Appellee,

v

No. 319475
Ingham Circuit Court
LC No. 13-000363-FC

CONNER CHANNING MCCOWAN,

Defendant-Appellant.

Before: RIORDAN, P.J., and DONOFRIO and BECKERING, JJ.

PER CURIAM.

Defendant appeals by right from his conviction following a jury trial of second-degree murder, MCL 750.317. He was sentenced to serve 20 to 60 years in prison, and for the reasons provided below, we affirm.

The instant appeal involves the stabbing death of Andrew Singler, who was the boyfriend of defendant's sister. Defendant admitted that he had killed Singler, but he maintained that the stabbing occurred during a fight in which he feared for his life and acted in self-defense. He further argued that he had stabbed the victim after suffering a blow to the head, which may have caused him to suffer a concussion.

## I. RIGHT TO PRESENT A DEFENSE

Defendant first raises a number of arguments concerning the trial court's restriction on his ability to present evidence he claims supported his assertion that he suffered a concussion during the altercation with the victim. He contends that the trial court's limitation of this evidence deprived him of his right to present a defense. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). "The trial court abuses its discretion when its decision is outside the range of principled outcomes." *Id*. Whether the exclusion of evidence violates a defendant's right to present a defense is a constitutional question that is reviewed de novo. *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002).

Generally, a defendant has a constitutional right to present a defense, but this right is not absolute. The defendant must still comply with established rules of evidence and procedure, *People v Kowalski*, 492 Mich 106, 139; 821 NW2d 14 (2012), including the requirement that the evidence the defendant wants to introduce is relevant, *People v Hackett*, 421 Mich 338, 354; 365

-1-

NW2d 120 (1984). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Generally, all relevant evidence is admissible and irrelevant evidence is inadmissible. MRE 402. However, relevant evidence still may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

Defendant first argues that the trial court erred when it refused to allow him to present the expert testimony of Douglass Watt, Ph.D., in order to educate the jury on the complexities of various types of head injuries and the impact they can have on an individual's perception. Watt proposed to testify about the gradations of concussive injuries and the myriad of effects a concussion could have on an individual's behavior and memory. In particular, defendant sought to have Watt testify that defendant's claim that he saw a bright flash of light after being struck in the head by the victim could be a sign that defendant had suffered a concussion. Further, Watt would have testified that concussions result in people being in a "confusional state," where they have a difficult time assessing situations and reacting appropriately. Defendant claims that this would have helped the jury understand that defendant held an honest and reasonable belief that he was in imminent danger.

The trial court concluded that the testimony was inadmissible because its underlying premise—that defendant had suffered a concussion at the time of the incident—was speculative. The trial court relied on the fact that there never was any diagnosis of defendant having been concussed at the time of the incident. And since there was no evidence of a concussion, the court believed that Watt's testimony about concussions would have unduly influenced the jury into believing that defendant had been diagnosed with a concussion.[1] Although not cited by the trial court, its ruling was based on MRE 403, which bars marginally probative evidence when that "evidence will be given undue or preemptive weight by the jury." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998). It is well established that the trial court is in the best position to make MRE 403 determinations on the basis of "a contemporaneous assessment of the presentation, credibility, and effect of testimony." *People v VanderVliet*, 444 Mich 52, 81; 508 NW2d 114 (1993).

First, the trial court did not err by prohibiting Watt from testifying regarding whether defendant had indeed suffered a concussion. By Watt's own testimony, he could not determine whether defendant had suffered a concussion as a result of being struck by the victim. Watt explained that concussions are diagnosed by reported symptoms and a clinical assessment "at or near the time" of the incident. Watt did not examine defendant until six months after the incident, and no one else had treated defendant for a concussion. Thus, the trial court did not err

---

[1] The trial court noted that with no way to verify whether defendant had suffered a concussion during the fight, introducing expert testimony on the matter of concussions "adds a different tenor."

when it found that Watt could not properly opine that defendant suffered a concussion during the altercation.

Second, the trial court also did not abuse its discretion in prohibiting Watt from testifying regarding the nature of concussions in general. Defendant is correct that his state of mind was an important element of establishing self-defense. To succeed on a claim of self-defense, defendant must establish that he honestly and reasonably believed that he was in danger of death or serious bodily harm. MCL 780.972(1)(a); see also *People v Heflin*, 434 Mich 482, 502, 509; 456 NW2d 10 (1990); *People v George*, 213 Mich App 632, 634-635; 540 NW2d 487 (1995). This Court has held that, in this context, reasonableness "depends on what an ordinarily prudent and intelligent person would do on the basis of the perceptions of the actor." *People v Orlewicz*, 293 Mich App 96, 102; 809 NW2d 194 (2011); see also *People v Bynum*, 496 Mich 610, 638; 852 NW2d 570 (2014) (stating that a defendant's belief must be both subjectively honest and *objectively* reasonable) (YOUNG, C.J., concurring in part and dissenting in part). This Court has stated that "[a] defendant's psychological idiosyncrasies may, at least in theory, be relevant to the reasonableness of the defendant's belief that he or she was in danger." *Orlewicz*, 293 Mich App at 102. For argument's sake, in light of the fact that a concussion could impact a person's mental state, Watt's testimony, assuming a proper foundation was provided, could be considered relevant under MRE 401. But this does not address the trial court's concern that the discussion of concussions was potentially confusing to the jury because it was never established that defendant was under the effect of a concussion when he stabbed the victim. Therefore, we cannot conclude that the trial court abused its discretion by precluding Watt from testifying under MRE 403.

Defendant also argues that the trial court erred when it refused to allow him to present evidence of head injuries that allegedly occurred prior to 2011. While the trial court allowed defendant to testify regarding two incidents in 2011 and 2012, the court precluded him from mentioning any incidents that took place before 2011 because it found that these earlier incidents were too remote to be relevant. The court also noted that there never was any medical attention sought and no medical diagnosis of a concussion was ever given. According to defendant's offer of proof, the symptoms he experienced stemming from the two earlier injuries were substantially similar to the two injuries he suffered in 2011 and 2012. As with the two injuries that occurred in 2011 and 2012, defendant maintained that he sustained head injuries that caused him to see flashes of light and were accompanied by initial confusion and loss of memory followed by later recovery.

Without any medical diagnosis of defendant having suffered a concussion at anytime, we conclude that the trial court did not abuse its discretion in determining that these earlier incidents were not relevant. Further, we note that these incidents also were cumulative, as defendant was allowed to testify regarding the other, similar 2011 and 2012 injuries. Thus, even if the court did err, any error was harmless.

Therefore, because all of the above evidence related to head injuries and concussions was properly excluded under the rules of evidence, defendant's right to present a defense was not abridged.

Defendant next argues that he was erroneously prevented from exploring fully the victim's propensity for violence, which he maintains was a crucial part of his claim of self-defense. At trial, defendant testified that he had prior knowledge that the victim had previously been in fights. He claimed this knowledge came from the victim himself. The trial court sustained the prosecutor's objection when defense counsel asked what the victim had specifically told defendant. Later, the court clarified its ruling and stated that, because defendant had already testified that he and the victim had not been involved in any prior fight, the court found that any other fight that the victim may have been involved with was not relevant; nor was the victim able to be cross-examined.

Defendant argues that his testimony concerning what he learned from the victim regarding previous fights should have been admitted because it was directly relevant to defendant's mental state. He argues that MRE 405 provides that specific instances of conduct can be used when a "trait of character of a person is an essential element of a . . . defense." Defendant is correct. Evidence of a victim's violent or turbulent character may be admissible even where the defendant has not claimed self-defense, for instance, to shed light on whether the killing was accidental or intentional. MRE 404(a)(2); *People v Anderson*, 147 Mich App 789, 793; 383 NW2d 186 (1985). This evidence is properly offered as reputation or opinion evidence. *People v Harris*, 458 Mich 310, 315, 318-320; 583 NW2d 680 (1998), citing MRE 405; see also *Anderson*, 147 Mich App at 792. "[T]he character of the victim may not be shown by specific instances of conduct unless those instances are independently admissible to show some matter apart from character as circumstantial evidence of the conduct of the victim on a particular occasion." *Harris*, 458 Mich at 319. Therefore, while it may be excluded to show that the victim was the initial aggressor, it can be admitted to show that the victim's prior actions may have reasonably caused the defendant to be apprehensive of the victim. *Id*.; see also *People v Cooper*, 73 Mich App 660, 664; 252 NW2d 564 (1977) (stating that past, specific violent acts by the victim can be admissible to show a defendant's apprehensive state of mind). Accordingly, because the excluded evidence was offered to support a claim that defendant feared for his life when the victim attacked him, defendant is correct that, generally, specific instances of the victim's actions would be admissible.

However, it matters little whether the jury knew that defendant was aware that the victim had acted violently in the past. Defendant knew, before appearing at the victim's apartment, that the victim was in a violent state of mind on the night in question based on the string of text messages exchanged between defendant and the victim. These exchanges made it abundantly clear not only to defendant, but to the jury, that the victim unquestionably was highly aggressive at the time and that his intention was to fight defendant.[2] Thus, the jury already was confronted with ample evidence showing that a reasonable person in defendant's place would have been apprehensive about approaching the victim. More to the point, with the jury already knowing for

---

[2] Some of the victim's texts to defendant included the following: "Great. Hurry up . . . so I can f***ing kill you"; "Not literally but you're ass needs to be beaten, and guess what . . . im gonna f***ing make sure it happens"; "hurry up [and get over here] so I can f***ing stick you in your face"

certain that the victim was in a highly aggressive and confrontational state, it knowing that defendant was aware of other, unrelated, past instances of the victim being violent would not have any tangible effect. Accordingly, any error was harmless. Further, as defendant did not make an offer of proof, the extent of any error is not properly preserved for this Court's review. MRE 103(a)(2); *People v Hackett*, 421 Mich 338, 352; 365 NW2d 120 (1984). As a result, defendant was not denied the right to present a defense because the jury was presented with evidence that the victim was, in fact, acting aggressively that night.

## II. PROSECUTORIAL MISCONDUCT

Defendant next raises a number of challenges to the introduction of evidence and prosecutor commentary, which he deems were violative of his Fifth Amendment right to remain silent. We note that while defendant conflates questions, testimony, or commentary involving his silence in his claim that the prosecutor committed misconduct, it is clear from the testimony that no inadmissible evidence was introduced; nor were the prosecutor's comments improper. Defendant presents a detailed argument concerning why evidence and commentary on his silence following his initial request for an attorney while at his home should be treated similarly to the more frequently analyzed impermissible use of post-arrest, post-*Miranda*[3] silence. See, e.g., *People v Shafier*, 483 Mich 205, 214; 768 NW2d 305 (2009). However, defendant fails to acknowledge that the trial court did, in fact, decide to foreclose all commentary and testimony concerning his silence after he invoked his right to speak with an attorney and repeatedly ruled that any evidence concerning same would not be admissible. The trial court thus treated defendant's pre-invocation silence differently from his post-invocation/post-arrest silence.

The trial court's decision to allow evidence and commentary concerning defendant's actions prior to his decision to invoke his right to an attorney was not erroneous. See *People v Sutton (After Remand)*, 436 Mich 575, 579-580; 464 NW2d 276 (1990). For the most part, the prosecutor followed the trial court's direction, with one exception where the prosecutor questioned defendant concerning any claims he had made to officers while in custody concerning his medical condition. At that time, the trial court sustained defendant's objection, struck the testimony, and provided a limiting instruction. In other instances, the trial court also repeatedly provided proper limiting instructions. And the prosecutor did not impermissibly comment during opening statement or closing argument about any post-invocation silence. Instead, the comments were limited to a claim that, if defendant's version of the events were true, he should have immediately told the police what had occurred or should have done so when he first left his vehicle arriving back home with his father. The closest the prosecutor came to committing error was when he stated:

> He is sitting there, calm as can be, not crying, not emotional, and not putting his head in his hand, rubbing his head. Never told anybody at that point that he was dazed, confused, head hurts. In fact, when Sergeant McCready walks in and says: How are you doing. What's he say? Doing good, sir. Doing good. Wouldn't

---

[3] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

that be the time to tell somebody that my head hurts, that I'm dizzy, that I'm dazed, and I'm confused? He didn't lie, because he didn't have the symptoms.

This comment was not in regard to defendant's *silence*—instead, it was about how defendant's statement that he was "doing good" would be contrary to someone who was suffering from a concussion or head injury.

Consequently, because none of defendant's alleged instances of prosecutorial misconduct was established, he is not entitled to relief. We also note that the trial court mitigated any improperly injected prejudice when it instructed the jury that it could not use any evidence of silence, even that which occurred prior to his arrest, as substantive evidence of guilt. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Finally, given the strong eyewitness evidence against defendant and the other admissible evidence concerning the lack of any visible effect from the victim's alleged assault, we find that any misconduct would not have been outcome determinative.

### III. SENTENCING

Defendant lastly argues that the trial court abused its discretion when it sentenced him to a minimum sentence at the top end of the sentencing guidelines range of 20 years and contends that MCL 769.34(10), which precludes review of this sentence by this Court, is unconstitutional. Because the sentence was within the guidelines range and defendant does not argue that any of the guidelines were scored incorrectly, or that the trial court relied on inaccurate information,[4] this Court is required to affirm the sentence pursuant to MCL 769.34(10), which provides in pertinent part:

> If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence . . . .

As to whether MCL 769.34(10) is unconstitutional to the extent it purports to preclude appellate review of sentences within the properly scored guidelines, appellant acknowledges that this issue has already been raised and rejected by our Supreme Court in *People v Garza*, 469 Mich 431, 434-436; 670 NW2d 662 (2003), and that this Court is bound by stare decisis to

---

[4] The parties agreed that the sentence guidelines range was 144 to 240 months. While defendant maintains that the trial court erred in accepting the recommendation of the probation department because that recommendation was based upon the department's "imperfect scoring of the guidelines," he does not argue that the guidelines, as corrected, were mis-scored or that the trial court relied on underlying inaccurate information during sentencing.

-6-

follow that decision, *People v Hall*, 249 Mich App 262, 270; 642 NW2d 253 (2002).

Affirmed.

/s/ Michael J. Riordan
/s/ Pat M. Donofrio
/s/ Jane M. Beckering